McFINLEY, Appellant,

v.

BETHESDA OAK HOSPITAL, Appellee.

[Cite as *McFinley v. Bethesda Oak Hosp.* (1992), 79 Ohio App.3d 613.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910001.

Decided May 20, 1992.

614

*Tobias & Kraus* and *David Torchia,* for appellant.

*Lawrence A. Flemer,* for appellee.

*Per Curiam.*

On June 16, 1986, a security officer employed at Bethesda Oak Hospital in Cincinnati arrested another hospital employee, plaintiff-appellant Courtney McFinley, after the officer confiscated from her what appeared to be a set of brass knuckles. As a result of the arrest, McFinley was formally charged with the offense of carrying a concealed weapon, brought to trial before a judge of the Hamilton County Municipal Court, and acquitted on the ground that she had not knowingly carried the brass knuckles as a weapon.[1] The acquittal, in turn, spawned the filing of a civil action against the hospital in which McFinley sought damages for defamation, invasion of privacy, intentional and negligent infliction of emotional distress, malicious prosecution, false arrest and false imprisonment, and wrongful discharge. In this appeal, we must now determine whether a judge of the court of common pleas improperly dismissed all of McFinley's civil claims by granting the hospital's motion for summary judgment. The entry of judgment as a matter of law, pursuant to Civ.R. 56(B), is the only assigned error given to us for review.

In support of her one claim of error, McFinley has raised a battery of issues that, in her view at least, should have brought about a denial of the hospital's motion for summary judgment. Included among those issues are whether her claims were compensable outside the workers' compensation system in Ohio, whether the resolution of the antecedent criminal prosecution effectively raised the bar of *res judicata* or collateral estoppel by judgment, and whether a prima facie showing of liability was made on each essential element of the various theories of recovery. Because the hospital's liability, if any, stems from the events surrounding the arrest of McFinley and its aftermath, much, if not all, of the present dispute on appeal may be distilled to present one

---

1. When announcing the acquittal from the bench, the municipal judge otherwise found, from the evidence presented at trial, that what had been taken from McFinley was, in fact, a weapon, and that it had been carried in a concealed fashion.

pivotal question: Was there a justification in law for the arrest?[2] There being only one reasonable conclusion to be drawn from the fundament supplied in this record for the resolution of the hospital's motion, we affirm the trial court's rendition of summary judgment.

Of the eight theories of liability set forth in McFinley's amended complaint, there are three that, by definition, depend specifically, in one way or another, upon an evaluation of the validity of McFinley's arrest. In the case of the torts of false arrest and false imprisonment (count five), one of the elements essential to recovery is a showing that a detention or confinement occurred without lawful justification. *Feliciano v. Kreiger* (1977), 50 Ohio St.2d 69, 4 O.O.3d 158, 362 N.E.2d 646; *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 549 N.E.2d 1210. In the case of a third tort, malicious prosecution (count four), success on the merits is predicated, *inter alia,* on a showing that criminal proceedings were undertaken in the absence of probable cause. *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus[3]; *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360; *Thyen v. McKee* (1990), 66 Ohio App.3d 313, 584 N.E.2d 23. On the surface, there may appear in logic to be some relationship between or overlap in the concepts of probable cause for the institution of a criminal prosecution and lawful justification for a detention or confinement. The two are not, however, fully synonymous as predicates for tort liability in Ohio. Because the existence of probable cause to defeat a claim for malicious prosecution does not necessarily mean that there is also a lawful justification for detention to defeat a claim for false arrest or false imprisonment, our analysis of McFinley's arrest in the instant case is divided into two parts, with a discussion of probable cause preceding the resolution of the issue of lawful justification for detention.

In an action for malicious prosecution, it is well settled in Ohio that a determination with respect to the absence of probable cause depends on an examination of what facts and circumstances were actually known to or reasonably within the contemplation of the defendant at the time of the

---

**2.** The judge presiding below did not articulate in the judgment entry a specific rationale to support his conclusion that the hospital was entitled to judgment as a matter of law. To frame our decision on appeal, we have chosen as a focal point only one of the issues in the array of those argued by the parties both in the memoranda supplied below and in the briefs submitted here. In view of the determinative effect we believe that issue to possess, we express no holding with respect to such other matters as the applicability of *res judicata* and the asserted exclusivity of workers' compensation remedies.

**3.** According to the *Trussell* syllabus, the remaining two elements of the tort are malice in the institution or continuation of the proceedings, and termination of the prosecution in the accused's favor.

instigation of criminal proceedings. *Melanowski v. Judy, supra,* at paragraph two of the syllabus. The determinative issue is not whether a particular crime was actually committed, but whether there was " ' "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged" * * *.' " *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12, quoting *Ash v. Marlow* (1851), 20 Ohio 119, paragraph one of the syllabus; see, also, *Thyen v. McKee, supra.* Although this often poses a question of fact to be resolved at trial, in an appropriate case it may be determined as a matter of law when the evidence provided in the record allows for only one reasonable conclusion. See *Huber v. O'Neill, supra* (directed verdict).

 In the instant case, if we measure the instigation of the criminal proceedings against McFinley by the relevant facts and circumstances disclosed in this record about her arrest, we are convinced that the only reasonable conclusion to be drawn is that there was indeed probable cause to believe that she had committed the offense of carrying a concealed weapon, in violation of R.C. 2923.12, even though she was later acquitted of the charge lodged against her in municipal court. The episode that culminated in the arrest was triggered by another hospital employee's report that McFinley was carrying a set of brass knuckles while she performed her duties as a stock clerk in the hospital's central department of supply and distribution. In the investigation that followed, an employee supervisor, accompanied by the director of hospital security, went directly to McFinley and confronted her as she sat behind a desk in the department where she worked. When informed about the other employee's report and asked whether she was, in fact, carrying a weapon, McFinley produced from a back pocket of the pants she was then wearing an object whose unmistakable appearance belied McFinley's attempts to dismiss it as nothing more significant than a bottle opener attached to a key chain. When a security officer summoned to the scene by radio confirmed that McFinley had relinquished what clearly appeared to be a set of brass knuckles and refused to return them to her, McFinley became visibly angry and loudly argumentative, and the officer placed her under arrest. She was then taken in handcuffs to the hospital's security office to await the arrival of a Cincinnati police officer and the formal institution of the criminal prosecution against her.

On the basis of the report about the brass knuckles, the confirmation obtained during the ensuing investigation, the distinctive appearance of the weapon, and the place where McFinley carried it at the time she was confronted by hospital personnel, it can only be said, in our judgment, that the

arresting officer had an appropriately grounded reasonable suspicion sufficient to warrant a cautious person in the belief that McFinley had, within the meaning of R.C. 2923.12(A), "knowingly carr[ied] or ha[d], concealed * * * ready at hand, [a] deadly weapon or dangerous ordnance." In this regard, we are not persuaded that McFinley's explanation for what she had been carrying—that it was a bottle opener on a key chain that she had innocently purchased at a locksmith's shop—reasonably allowed, under all the circumstances, for a differing conclusion with respect to the existence of reasonable suspicion, either from the standpoint of McFinley's mental state (whether she was knowingly in possession of a weapon) or from the standpoint of the nature of the object recovered from her (whether she, in fact, had a deadly weapon). Whatever value the explanation may have had to create a reasonable doubt in the trial of the formal criminal charge, its force remained insufficient to dispel a reasonable suspicion for the institution of the criminal proceedings predicated upon McFinley's arrest.

■ We likewise reject the assertion that a lack of reasonable suspicion can be found in this record on the basis of evidence showing that McFinley carried the weapon in such a way that at least a part of the brass knuckles could be seen hanging outside her back pocket. Under Ohio law, the element of concealment in the offense of carrying a concealed weapon does not require that the weapon be completely hidden from view under all conceivable circumstances. Instead, the offense may be committed when the weapon " 'is not discernible by the ordinary observations of persons coming into contact with the person carrying it, usually observing him, as people do in the ordinary and usual associations of life.' " *State v. Youngblood* (Dec. 5, 1979), Hamilton App. No. C–790018, unreported, at 2, quoting *State v. Edwards* (Feb. 17, 1970), Hamilton App. No. C–75125, unreported; see, also, *State v. Davis* (1984), 15 Ohio App.3d 64, 15 OBR 93, 472 N.E.2d 751; *State v. Pettit* (1969), 20 Ohio App.2d 170, 49 O.O.2d 200, 252 N.E.2d 325. In *Youngblood, supra,* we held specifically that there was evidence of concealment sufficient to justify a criminal conviction when the prosecution showed that the defendant moved his hands, upon approaching a police officer, to hide from view the butt of a revolver that otherwise clearly protruded from his waistband.

■ In the instant case, it is beyond fair debate that the brass knuckles would not have been subject to ordinary observation either at the time McFinley was seated behind the desk where she was first approached by hospital personnel or on the occasion of any face-to-face encounter that might otherwise have typically occurred while she was on her feet. Under these circumstances, we are persuaded that the only reasonable conclusion to be drawn is that there was probable cause to believe that she had been carrying

the brass knuckles in a concealed fashion even though a particular observer might have been able to see the weapon from a certain vantage point while McFinley was standing. We hold, therefore, that her arrest was, as a matter of law, supported by probable cause, and that the hospital was, accordingly, entitled to summary judgment on her claim of malicious prosecution.

Moving on to the claims of false arrest and false imprisonment and their shared element of detention without lawful justification, we take as the point of departure from the first part of our analysis the following observations endorsed by the Ohio Supreme Court:

" [F]alse arrest and false imprisonment as causes of action are indistinguishable. The only distinction lies in the manner in which they arise. * * *

" ' * * *

" 'An action for false imprisonment is closely akin to the actions for malicious prosecution, abuse of process and vexatious suit. * * * Although malicious prosecution and false imprisonment are frequently confused, the distinction between them is fundamental. In the case of malicious prosecution, as in abuse of process, valid process justifies restraint or imprisonment, and the gist of the cause of action is malice or evil intent. * * * A suit for false arrest or false imprisonment is the proper action where the aggrieved party is arrested without legal process, or under a void process; but where the process on which the arrest is made is regular on its face, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution.' " (Emphasis deleted.) *Rogers v. Barbera* (1960), 170 Ohio St. 241, 243–244, 10 O.O.2d 248, 249, 164 N.E.2d 162, 164, quoting 22 American Jurisprudence (1939) 353, False Imprisonment, Sections 2 and 3; see, also, *Kaiser v. Procter & Gamble Co.* (Feb. 10, 1988), Hamilton App. No. C–860832, unreported, 1988 WL 14038.

With the focus narrowed to the validity of process, we take it that the justification for detention, with respect to the torts of false arrest and false imprisonment, is to be measured primarily by two considerations: (1) whether the defendant was a person clothed in law with the authority to undertake a detention, and (2) whether the detention was accomplished pursuant to accepted legal procedures.

In the instant case, we have a hospital security officer making a warrantless arrest for what was an offense of violence classified in law as a misdemeanor. See R.C. 2923.12(D); R.C. 2901.01(I)(1). According to undisputed evidence contained in the record, that officer was, at the time he arrested McFinley, duly commissioned by the city of Cincinnati to act as a private police officer. See R.C. 737.05 (a city may " * * * commission private

policemen * * * under such rules and regulations as the legislative authority prescribes.") He was, therefore, at least in general, vested with the power of arrest under the authority of Cincinnati Municipal Code Section 887–11, which reads, in relevant part, as follows: "Persons commissioned as private police officers shall have the powers of police officers in arresting or citing persons for offenses against the laws and ordinances."

■ With respect to the procedural validity of the officer's arrest of McFinley in the absence of a warrant, where the offense in question was carrying a concealed weapon, the applicable law is set forth in R.C. 2935.03(B):

"When there is reasonable ground to believe that an offense of violence * * * has been committed within the limits of the political subdivision, * * * [a] police officer * * * may arrest and detain until a warrant can be obtained any person whom he has reasonable cause to believe is guilty of the violation."

Under the terms of the statute, it is clear, at least in this instance, that the standard of probable cause does ultimately become relevant to the torts of false arrest and false imprisonment to the extent that a police officer's procedural authority to proceed without an arrest warrant is predicated under Ohio law on the existence of reasonable cause to believe that a particular person has committed an offense of violence. In this sense, we are persuaded that the terms "reasonable ground" and "probable cause" are functional equivalents.

■ Because we have already determined in our analysis of the claim of malicious prosecution that there was, as a matter of law, probable cause in the instant case for McFinley's arrest, our task here is greatly simplified. Given the existence of probable cause and the security officer's undisputed authority as a duly commissioned private police officer to make arrests, we are convinced that the only reasonable conclusion to be drawn on the state of this record is that McFinley's arrest was procedurally valid in the absence of a warrant. It follows then that there was, in law, a recognized justification for detention, and the hospital was accordingly entitled to summary judgment on her claims of false arrest and false imprisonment.

This brings us to the remaining five theories of liability upon which McFinley relied in her amended complaint. Although none of those theories is, by general definition, predicated specifically upon the validity of McFinley's arrest, it is clear from the arguments given to us on appeal that success on each is made to depend ineluctably upon a factual showing of some impropriety in the episode that gave rise to the arrest and its aftermath. Because we are persuaded, for the reasons we have already given, that the evidence in the

record is legally insufficient to taint the arrest, and because it necessarily follows from our holding with respect to the arrest's validity that the hospital was entitled to do what it did in having McFinley escorted in handcuffs to a security office so that she could, in due course, be turned over to the custody of a Cincinnati police officer, there is no basis in fact or in law to withstand summary judgment on any of the claims for relief asserted against the hospital. The hospital's motion was, therefore, appropriately granted, and the only assignment of error given to us for review is not well taken.

We affirm the judgment of the court of common pleas.

*Judgment affirmed.*

GORMAN, P.J., SHANNON and UTZ, JJ., concur.