WURTH et al., Appellants,

v.

EMRO MARKETING COMPANY et al., Appellees.

[Cite as *Wurth v. Emro Marketing Co.* (1998), 125 Ohio App.3d 494.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L-97-1158.

Decided Jan. 30, 1998.

George C. Rogers, for appellants.

Gerald R. Kowalski and Rebecca C. Sechrist, for appellees.

GLASSER, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, which granted the summary judgment motion of defendants-appellees, Emro Marketing Company and R. Daye Harter, and denied the summary

judgment motion of plaintiffs-appellants, Jenelle and Steven Wurth. Appellants have raised the following assignments of error for our determination:

"1. The trial court erred in overruling plaintiffs' petition for disclosure of the grand jury testimony of defendants, in failing to apply the five part test of *Petition For Disclosure of Evidence* (1980), 63 Ohio St.2d 131 [17 O.O.3d 131, 407 N.E.2d 513], to the determination of such petition, and in failing to determine that there was a particularized need shown by Exhibit B to the Complaint.

"2. The trial court erred in holding that the grand jury probable cause presumption arising from the return of indictment applied to the April 26, 1995 criminal complaint filed by Harter and Emro dismissed [*sic*] August 25, 1995, a separate proceeding.

"3. The trial court erred in overruling plaintiffs' motion for summary judgment on the issue of liability as to both claims of malicious prosecution, Harter and Emro having admitted that they had no evidence to support the allegations in the criminal complaint, and that they had no evidence to establish the elements of grand theft other than some whited over inventory entries made by Jenelle Wurth and had evidence, undisclosed to the grand jury of another person responsible for shortages who had admitted to the theft.

"4. The trial court erred in failing to note and apply the fact that the *presumption* of probable cause from grand jury indictment *disappears when defendant submits evidence on the issue.*

"5. The trial court erred in granting defendants' motion for summary judgment for both proceedings when all the evidence taken in the light most favorable to plaintiffs would show not only that defendants did not have probable cause at the time of the institution of the two prosecutions, but knowingly fabricated false claims of additional evidence in an attempt to acquire a grand jury indictment.

"6. The trial court erred in holding that the false claims of evidence in Exhibit B to the Complaint was privileged *because it was submitted to the prosecutor for purposes of grand jury indictment,* which holding Exhibit or irregularity in *grand jury proceedings* in consideration of summary judgment for malicious prosecution purposes." (Emphasis *sic.*)

The relevant, undisputed facts of this case are as follows. On January 11, 1995, Jenelle Wurth was fired from her position as store manager of Emro's Gas Town store on Hill Avenue in Toledo, Lucas County, Ohio. As the store manager, Wurth was responsible for keeping track of the store's inventory on a daily basis. An unannounced audit conducted on January 11, 1995 revealed an approximately $6,000 shortage in the cigarette inventory for the store for the period of November 1, 1994 through January 10, 1996. Generally, the average shortage per audit was $237. After the auditor discovered the discrepancy, Wurth

contacted Daye Harter, Emro's district manager, who soon arrived at the store. Harter then reviewed the inventory sheets and realized that the daily cigarette count sheets and the book inventory did not equate. Harter then took Wurth into a storage building behind the store and questioned her. Harter testified in his disposition that upon questioning her, Wurth held her head down, started crying and finally stated, "I falsified the books." Subsequently, David Carr, Emro's regional manager, was called to the store. In his disposition, Carr testified that Wurth told him that she had changed the numbers in the books but did not take anything. Carr further stated that Wurth did not use the word "falsify." Carr then asked Wurth to write a statement explaining her actions. Wurth testified in her deposition that Carr asked her to write a statement indicating that she purposely forged numbers and threatened to prosecute her if she did not comply. Wurth refused and was terminated from employment.

An investigation by Carr and Harter of store videotapes and corresponding cash register tapes revealed that another employee, Shelley Morse, had been stealing cigarettes from the store. That evidence, however, substantiated a loss of only approximately $1,100 attributable to Morse. Accordingly, there remained additional losses that were unaccounted for. Moreover, the daily cigarette inventory sheets included numerous blocks in which numbers had been written, whited out and then new numbers had been substituted. Carr and Harter reported the theft to the police, naming both Wurth and Morse as suspects. Morse subsequently paid restitution, but on April 26, 1995, Harter swore out a complaint against Wurth in the Toledo Municipal Court alleging that Wurth had taken approximately $3,600 worth of lottery tickets and/or cigarettes from Emro. In his deposition, Harter testified that Morse had revealed that she had seen Wurth "scratch off an entire $200 book of lottery tickets for her own personal use without paying for them." He further testified that Michelle Hazard, the assistant store manager under Wurth, had stated that she had seen Wurth play the lottery.

On May 2, 1995, an unemployment compensation hearing was held on Wurth's claim for benefits at which Harter, Carr, Hazard, and Wurth testified. At that hearing, Harter stated that Wurth had confessed to him that she had falsified inventory counts. He further stated that she specifically used the word "falsify." Carr, however, stated that when he arrived at the store Wurth admitted to changing the numbers but never used the word "falsify." He further stated that Wurth denied taking any goods from the store. Finally, Carr testified that during the course of his investigation he interviewed Morse and Hazard and that they both said that Wurth had been changing the numbers and that she had been scratching off entire books of lottery tickets. At the hearing, however, Hazard denied having any personal knowledge regarding the source of the shortage and

denied ever telling Harter or Carr that Wurth had scratched off entire books of lottery tickets without paying for them. Finally, Wurth testified that while she admitted to Harter and Carr that she had changed numbers, the change was only made when she realized that she had miscounted cigarettes. In that instance, she would white out the incorrect figure and write in the correct figure. She denied, however, admitting to Harter that she falsified company records and denied ever scratching off lottery tickets for which she had not paid.

In August 1995, the criminal case pending against Wurth in the Toledo Municipal Court was dismissed by the city prosecutor so that the case could be presented directly to the grand jury. To assist in that presentation, Harter, at the request of the county prosecutor, prepared what is referred to in the record as both Exhibit B and Exhibit 6. (For purposes of this decision, we will refer to the exhibit as Exhibit B.) In that document, Harter states:

"In an unemployment hearing in which Ms. Wurth was seeking unemployment compensation, she admitted under oath and on tape recording to falsifying company paperwork.

"Shelly [sic] Morse, a former employee of Ms. Wurth's has information to convict Ms. Wurth and is willing to cooperate. She has stated that she has seen Ms. Wurth scratch off an entire ($200) book of lottery tickets for her own personal use without paying for them. She apparently has other information which his not known at this time.

"Michelle Hazard, assistant manager under Ms. Wurth, has also stated that she has seen the defendant play lottery."

In addition, Harter testified before the grand jury. On January 5, 1996, Wurth was indicted by the Lucas County Grand Jury and charged with theft in violation of R.C. 2913.02(A) (case No. CR 96–5011). After arraignment and entering a plea of not guilty, she was subsequently tried and found not guilty by a jury.

On April 29, 1996, Wurth and her husband, Steven, filed a complaint against Emro and Harter which asserted claims of malicious prosecution, libel, and loss of consortium.[1] On that same day, they also filed in the lower court a petition for disclosure of grand jury testimony in case No. CR 96–5011, alleging that justice required the disclosure. Upon consideration, the trial court, in an opinion and judgment entry dated July 5, 1996, denied the petition. In particular, the court held that testimony given before a grand jury cannot be the basis of a civil action for malicious prosecution and that appellants had not otherwise satisfactorily demonstrated a "particularized need" for the grand jury testimony. Subsequent-

---

1. An additional claim for intentional infliction of emotional distress was voluntarily dismissed by appellants.

ly, both appellants and appellees filed motions for summary judgment. On May 1, 1997, the lower court filed its opinion and judgment entry granting appellees summary judgment and denying summary judgment to appellants. Appellants' appeal challenges both the ruling on the petition to disclose grand jury testimony and the ruling on the summary judgment motions.

■ In their first assignment of error, appellants assert that the trial court erred in denying their petition to disclose grand jury testimony. Specifically, appellants argue that the five-part test set forth in *Petition for Disclosure of Evidence* (1980), 63 Ohio St.2d 212, 17 O.O.3d 131, 407 N.E.2d 513, controls a trial court's ruling on a petition to disclose grand jury testimony and that the lower court in the present case failed to apply that test.

There is a long history of secrecy attendant to grand jury proceedings in the jurisprudence of the United States. Nevertheless, in recent years, the Supreme Court of Ohio has relaxed the rule preventing discovery of witnesses' testimony before a grand jury. *State v. Tenbrook* (1987), 34 Ohio Misc.2d 14, 15, 517 N.E.2d 1046, 1047–1048. Initially, the court allowed disclosure of grand jury witness testimony only in criminal cases. Specifically, the court held that "an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Patterson* (1971), 28 Ohio St.2d 181, 57 O.O.2d 422, 277 N.E.2d 201, paragraph three of the syllabus. Subsequently, however, in *Petition for Disclosure, supra,* the court determined that the particularized need test was equally applicable to civil cases in which a movant sought access to a witness's grand jury testimony in a prior criminal matter. The Supreme Court of Ohio held that a court that supervised a grand jury could disclose evidence presented to that grand jury where justice requires in civil as well as criminal matters. *Id.* at paragraph one of the syllabus. The court then stated in dicta: "Such disclosure can be ordered only after the court carefully weighs the need to maintain the secrecy of the grand jury proceedings against petitioner's need for the information and determines that justice can only be done if disclosure is made." *Id.* at 218, 17 O.O.3d at 135, 407 N.E.2d at 518. In weighing the two factors, the court approved of the trial court's use of the five reasons for preserving secrecy set forth in *United States v. Rose* (C.A.3, 1954), 215 F.2d 617, and approved by the United States Supreme Court in *Douglas Oil Co. v. Petrol Stops Northwest* (1979), 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156, and *United States v. Procter & Gamble* (1958), 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077. Those reasons for preserving secrecy are:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to

prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *Rose, supra,* 215 F.2d at 628–629.

Appellants now contend that the trial court failed to consider these factors in evaluating the petition to disclose and, therefore, erred in denying the petition.

The determination as to whether a petitioner has demonstrated a "particularized need" that outweighs the need for secrecy is a matter left to the sound discretion of the trial court and, therefore, will not be disturbed on appeal absent a showing of an abuse of that discretion. *Tenbrook, supra,* 34 Ohio Misc.2d at 16, 517 N.E.2d at 1048–1049. Examples of particularized need that have been recognized by the United States Supreme Court are "to impeach a witness, to refresh his recollection, to test his credibility and the like." *Procter & Gamble, supra,* 356 U.S. at 683, 78 S.Ct. at 987, 2 L.Ed.2d at 1082. In the proceedings below, appellants' asserted need for the grand jury transcripts was to punish an alleged abuse of the grand jury system. That is, appellants alleged that Harter and Carr lied to the grand jury. However, as this court stated in *Elling v. Graves* (1994), 94 Ohio App.3d 382, 387, 640 N.E.2d 1156, 1159: "[A] witness is immune from civil liability for giving false testimony. This ban on civil liability for false statements applies even in cases where the party testifying knew his statements were false." (Citations omitted.) The trial court determined that appellants had not established a particularized need for the grand jury testimony. We agree. Given that appellants had not established such a need, we see no error in the trial court's failure to expressly consider the factors set forth in *Petition for Disclosure.* Accordingly, the first assignment of error is not well taken.

In their remaining assignments of error, appellants challenge various aspects of the trial court's ruling on the summary judgment motions. This court has fully and carefully reviewed the record and the law applicable to the facts of this case. We find that the opinion of the trial court is an appropriate and legally correct discussion of the facts and law involved in this civil dispute. We adopt the trial court's opinion and judgment entry (see Appendix) and find appellant's second, third, fourth, fifth and sixth assignments of error not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellants.

*Judgment affirmed.*

HANDWORK, P.J., concurs.

SHERCK, J., dissents.

SHERCK, Judge, dissenting.

I respectfully dissent. The *sine qua non* of a malicious prosecution case is that the defendant undertook prosecution without probable cause. Probable cause, in this instance, is defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious [person] in the belief that the person accused is guilty of the offense with which he [or she] is charged." *Ash v. Marlow* (1851), 20 Ohio 119, at paragraph one of the syllabus; see, also, *Rogers v. Barbera* (1960), 170 Ohio St. 241, 246, 10 O.O.2d 248, 250–251, 164 N.E.2d 162, 166; *Evans v. Smith* (1994), 97 Ohio App.3d 59, 68, 646 N.E.2d 217, 222–223. The determination of whether probable cause existed at the time the charges were pursued is ordinarily a question of fact and may be determined as a matter of law only if reasonable minds could reach no other conclusion. *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 29, 20 O.O.3d 17, 18–19, 419 N.E.2d 10, 11–12; see, also, *McFinley v. Bethesda Oak Hosp.* (1992), 79 Ohio App.3d 613, 617, 607 N.E.2d 936, 939–940.

In my mind, there is considerable doubt that Harter and his principal, Emro, had probable cause to pursue criminal charges after the unemployment compensation hearing. Harter may have initially believed that when Jenelle Wurth told him she had altered inventory forms, she committed the act of "falsification." However, Wurth made it clear at the unemployment compensation hearing that these were not equivalent statements. Therefore, at the time of his appearance before the grand jury, Harter knew that Wurth denied falsifying documents, that his assertion that two other employees would accuse her of taking unpaid lottery tickets would not hold water, and that someone else had admitted to stealing from the store. Balanced against that exculpatory evidence was only that an audit showed missing inventory, Wurth was in charge, and Wurth sometimes used white-out on her inventory forms. Given these circumstances, it seems that there is considerable doubt as to whether a reasonable ground existed for a cautious person to believe that Wurth was guilty of theft.

The grand jury indictment does not *per se* constitute probable cause if it was founded on false testimony. That is why the transcript of the grand jury

proceedings is so relevant here. It is important to know what Harter told the grand jury and what information he withheld. For these reasons, I would reverse the summary judgment against appellants and remand the matter to the trial court for further proceedings, including an examination of Harter's grand jury testimony.

## APPENDIX

### IN THE COURT OF COMMON PLEAS, LUCAS COUNTY, OHIO

Jenelle Wurth et al., Plaintiffs,

vs.

Emro Marketing Company et al., Defendants.

### Case No. CI96–1381.

J. RONALD BOWMAN, Judge.

This cause comes before the court on cross-motions for summary judgment filed herein by plaintiffs Jenelle and Steven Wurth ("Plaintiffs") and defendants Robert Day Harter and Emro Marketing Company ("Defendants"), respectively. For the reasons which follow, the court finds defendants' motion for summary judgment well taken and plaintiffs' motion for summary judgment not well taken.

I

Plaintiff Jenelle Wurth was employed as a store manager of a local gas station/convenience store owned and operated by defendant Emro Marketing Company ("Emro").[1] As manager, Wurth was responsible for keeping track of the store's inventory. However, on or about January 10, 1995, following an audit, defendant Robert Daye Harter, a district manager for Emro, and David Carr, a regional manager for Emro,[2] accused Wurth of falsifying inventory records. The audit revealed a significant discrepancy between Wurth's inventory figures and the store's actual inventory. According to Wurth, when Harter and/or Carr confronted her in a nearby storage building about the discrepancy, she denied any wrongdoing.[3] Wurth claims that those portions of the inventory records that were changed were the result of errors on her part in counting the merchandise. When she realized that she made such a mistake, she would "white out" the

---

1. The gas station is variously referred to by the parties as a "Gastown Station," a "Speedway Store," and a "Gas Town."

2. Carr is not named as a defendant.

3. In contrast, Harter testifies in his deposition that Wurth admitted to falsifying the books.

incorrect figure, recount the merchandise, and then record the corrected amount. Wurth's protestations of innocence notwithstanding, Harter and/or Carr allegedly threatened to fire her and file criminal charges against her if she did not sign a written confession/statement. Wurth refused and, though she continued to deny any wrongdoing, was immediately discharged.

Harter and Carr then contacted the Toledo Police and reported the matter. Eventually, a criminal complaint was filed against Wurth in the Toledo Municipal Court.[4] Upon learning of the charges, Wurth presented herself to Toledo Police at the Safety Building, where she was handcuffed, fingerprinted, and photographed. Apparently, these charges were dismissed and the matter was presented directly to the Lucas County Grand Jury. On January 55, 1996, Wurth was indicted on one count of grand theft. Wurth was again handcuffed and fingerprinted. The matter proceeded to trial and, on April 18, 1996, Wurth was found not guilty.

Previously, Wurth and others testified at an unemployment compensation hearing concerning the alleged theft. Plaintiffs claim that, subsequent to this hearing, Harter, acting on behalf of himself and Emro, created a document containing false statements regarding the testimony given at the hearing and other untrue information. According to this document, (1) Wurth admitted under oath at the unemployment compensation hearing that she had falsified company records, (2) an employee, Shelly Morse, stated that she had seen Wurth "scratch off an entire ($200) book of lottery tickets for her own personal use without paying for them," and (3) another employee, Michelle Hazard, also stated that she had seen Wurth play the lottery. Plaintiffs allege that Harter published these false statements to the investigating officer, the prosecutor, and others. Further, plaintiffs allege that these false statements were presented to the grand jury for the purpose of establishing probable cause and to secure an indictment.

On April 29, 1996, plaintiffs filed a complaint against Emro and Harter seeking compensatory and punitive damages. Plaintiffs claim that because of the defendants' actions, including the malicious prosecution of Wurth and libelous statements, Wurth suffered, *inter alia*, extreme emotional distress, deprivation of her liberty and freedom, lost wages, embarrassment, and public ignominy.[5]

Both plaintiffs and defendants have now moved for summary judgment, their motions having been filed on March 26, 1997 and March 24, 1997, respectively.

---

4. Wurth was accused of stealing over $3,000 worth of lottery tickets and/or cigarettes.

5. Plaintiff Steven Wurth's claims are for loss of consortium and emotional distress as a result of the malicious prosecution of and libelous statements against his wife.

The standard governing a motion for summary judgment is set forth in Civ.R. 56, which provides:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [the] rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

## III

### A.  Intentional Infliction of Emotional Distress

Plaintiffs have withdrawn their claim(s) for intentional infliction of emotional distress. Accordingly, this issue need not be addressed.

### B.  Malicious Prosecution

"The tort of malicious criminal prosecution is designed to compensate a wrongly accused criminal defendant for the damages caused by the misuse of criminal actions." *Carlton v. Davisson* (1995), 104 Ohio App.3d 636, 650, 662 N.E.2d 1112, 1121, citing *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 84, 564 N.E.2d 440, 442–443. In order to prevail on Wurth's claim of malicious criminal prosecution, plaintiffs must establish three essential elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. Arrest of the plaintiff or seizure of his property is not a necessary element." *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 146, 559 N.E.2d 732, 736.

Although the parties apparently do not dispute that the prosecution of Wurth was terminated in her favor, there is a dispute as to whether there existed probable cause to institute the prosecution and whether there existed malice in instituting the prosecution.

"The gist of an action for malicious prosecution is probable cause and malice may be inferred from the absence of probable cause." *Carlton v. Davisson*, 104 Ohio App.3d at 650, 662 N.E.2d at 1121, citing *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360, paragraph one of the syllabus. Probable cause for purposes of a malicious prosecution action is defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged * * *." *Ash v. Marlow* (1851), 20 Ohio 119, 1851 WL 16, paragraph one of the syllabus. "There is no requirement that the defendant must have evidence that will ensure a conviction." *Deoma v. Shaker Hts.* (1990), 68 Ohio App.3d 72, 77, 587 N.E.2d 425, 428, citing *Epling v. Express Co.* (1977), 55 Ohio App.2d 59, 62, 9 O.O.3d 220, 222, 379 N.E.2d 239, 241–242.

In addition, "[a]n indictment is *prima facie* evidence of probable cause and a plaintiff must bring forward substantial evidence to rebut this." *Carlton v. Davisson*, 104 Ohio App.3d at 650–651, 662 N.E.2d at 1121. The plaintiff must bring forward evidence suggesting that "the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular." *Deoma v. Shaker Hts.*, 68 Ohio App.3d at 77, 587 N.E.2d at 428.

Upon examination of the competent summary judgment evidence, the court finds that plaintiffs have failed to offer any substantial evidence tending to show that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular or that defendants otherwise lacked probable cause to initiate criminal proceedings against Wurth.

There is unrebutted evidence before the court that (1) the January 1995 audit revealed a significant discrepancy in inventory, (2) Wurth was responsible for keeping track of inventory, (3) the inventory records evidenced the "whiting out" and changing of figures, (4) an investigation initially revealed that at least $3,500 to $3,600 worth of inventory was missing, (5) at the time the complaint was sworn in Toledo Municipal Court defendants had informed the city prosecutor that their investigation was ongoing but the city prosecutor advised that what they had would be good enough and the city prosecutor advised as to how the complaint should be worded, (6) the charges in Toledo Municipal Court were dismissed and the matter was presented directly to the Lucas County Grand Jury, (7) Harter prepared the document in question only after the county prosecutor requested

him to do so, (8) Harter had informed the county prosecutor that the information was what he had gotten out of the unemployment compensation hearing/other sources, (9) at that time the county prosecutor had requested the tape of the unemployment compensation hearing (possibly considering reviewing the hearing testimony for the purpose of comparing it to Harter's summary), and (10) the Lucas County Grand Jury did return an indictment.

Accordingly, the court finds this aspect of plaintiff's motion for summary not well taken and this aspect of defendants' motion for summary judgment well taken.

### C.   Libel

Plaintiffs libel claim is predicated upon the allegation that Harter prepared a certain document (discussed *supra*) that contained numerous false statements. Plaintiffs assert that Harter then published the document to the grand jury. However, "remarks made by parties or witnesses during and relevant to judicial proceedings are absolutely immune from civil suit." *Carlton v. Davisson*, 104 Ohio App.3d at 652, 662 N.E.2d at 1122, citing *Willitzer v. McCloud* (1983), 6 Ohio St.3d 447, 448, 6 OBR 489, 489–490, 453 N.E.2d 693, 694–695. Taking plaintiffs' assertion as true, the allegedly defamatory statements were made during, and do not appear to have been anything other than relevant to, the grand jury proceedings and were, therefore, protected by absolute immunity from civil suit. *Carlton.*

In addition, plaintiffs claim that Harter published the document to the prosecuting attorney. However, there is unrebutted testimony before the court that Harter prepared the document only after the prosecuting attorney requested him to do so. Under the facts presented, the court again finds that the allegedly defamatory statements were protected by absolute immunity from civil suit. See *M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 634 N.E.2d 203.

Accordingly, the court finds this aspect of plaintiffs' motion for summary judgment not well taken and this aspect of defendants' motion for summary judgment well taken.

In view of the above, it is ORDERED, ADJUDGED and DECREED that plaintiffs' motion for summary judgment be and hereby is found not well taken and same is overruled and denied.

It is FURTHER ORDERED, ADJUDGED and DECREED that defendants' motion for summary judgment be and hereby is found well taken and same is granted.

*So ordered.*