DECISION AND JUDGMENT
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, which granted summary judgment in favor of appellees, Detectives David Mullin, Robert Leiter, James Scott, and Sergeant Steve Forrester. In 1996, appellees were all members of the Crimes Against Persons Unit of the Toledo *Page 2 
Police Department located in Toledo, Lucas County, Ohio. The relevant facts of this case are as follows.
 {¶ 2} On the morning of December 7, 1996, a mail carrier contacted the Toledo Police Department because mail was accumulating in the mailbox at one of the houses on his route. When officers arrived at that residence, they entered the home and discovered the bodies of Gertrude Thompson and Edward Kowalczk. The decedents were beaten and stabbed multiple times; they died as the result of blunt force trauma to the head.
 {¶ 3} The officers called the Crimes Against Persons Unit; Detective Mullin was the first to arrive on the scene and became the lead investigator. He noted that there was no sign of a forced entry into the home and surmised that the victims might have known their assailant. Mullin also learned that Thompson owned not only the house where she was murdered, but also several rental properties in the area. A search of the premises revealed a list of the tenants' names. Appellant, Ethan Walls, was one of those persons who rented property from Thompson.
 {¶ 4} The detectives took the answering machine tape from Thompson's residence and listened to it in order to ascertain the identity of the callers. One of the callers was appellant, who left two messages on the answering machine. The first message was recorded on December 2, 1996, and informed Thompson of the fact that he would arrive at Thompson's residence at the "same time" on December 4, 1996. In the second message, which was recorded on December 3, 1996, appellant stated that he was "at work" and would call Thompson "about the time [he] got off." *Page 3 
 {¶ 5} During their investigation, the detectives interviewed many people, including appellant. During his interview, appellant stated that he was driven by John Johnson to Thompson's house on December 2, 1996 to pay his rent; however, no one was home so he walked to his residence. In his statement, Johnson indicated that he waited for appellant and saw him go into Thompson's home "for a few seconds." Johnson claimed that appellant then returned to the vehicle and told him that he put his rent in Thompson's mailbox. The two men drove to a carryout and then to appellant's residence, where Johnson stayed "until about midnight."
 {¶ 6} According to appellant, on December 3, 1996, he purchased a money order to pay his rent, added a $5 bill to repay Thompson for money she loaned him, and put both the money order and cash in an envelope. Appellant said that he put the envelope in the her mailbox and walked home. Appellant and his brother, Melvin, then returned to Thompson's house on December 5, 1996, retrieved his $5 and the money order from the mailbox. He told the detectives that Thompson always called or left a note on his door letting him know that she received the rent. He claimed that she never called or left a note; therefore, he assumed that she was out of town and decided to pay the rent the following Monday, December 9, 1996. Melvin told the detectives that his brother entered the residence on the fifth of December.
 {¶ 7} The police then spoke to Dorothy Robinson, appellant's former girlfriend, who until recently, lived with appellant at the rental property owned by Thompson. She told the detectives that Thompson never notified her tenants that she had received their *Page 4 
rent. This detail was confirmed by other tenants. Robinson also stated that she left appellant because of his drug habit, that he became violent when he used drugs, and that he always carried a filleting knife.
 {¶ 8} Numerous individuals were interviewed during the course of the homicide investigation. One of the interviewees, Annette Broadaxe, told the detectives that a woman named JoAnn Person Harvey had information concerning the murders of Thompson and Kowalczk. Eventually, the detectives were able to locate Harvey, who provided them with a written statement. In that statement, Harvey said that in early December, she was at a Robert Taite's place when appellant arrived. According to Harvey, appellant's shirt had blood on the sleeve, he was sweaty and dirty, and he was carrying a velvet cloth that had, at the least, a wristwatch wrapped in it. Appellant told Taite that he needed "some dope." After they got "high," appellant allegedly admitted that he "killed the couple around the corner." Both Taite and another individual, Cheryl Leake, who was also present on the night in question, told the police that when appellant arrived at Taite's, he was very dirty, and bought a "lot of dope." Leake maintained that appellant's shirt was bloody and that he had blood spatters on his face.
 {¶ 9} Based upon the information offered, primarily, by JoAnn Harvey, who was administered a polygraph examination and "passed," the investigators believed that they had sufficient probable cause to arrest appellant and obtained a warrant from the Lucas County Prosecutor. Appellant was arrested on April 19, 1997, and incarcerated. Subsequently, the Lucas County Grand Jury returned an indictment charging appellant *Page 5 
with one count of aggravated robbery and/or aggravated burglary, with specifications, and one count of aggravated murder, with specifications. On the eve of appellant's trial, JoAnn Harvey recanted the information that she provided to the detectives, and appellant was released.
 {¶ 10} On January 27, 1999, appellant filed a complaint in the Lucas County Court of Common Pleas naming the city of Toledo, the Toledo Police Department, and Detectives Mullin, Leiter, Scott, and Forrester as defendants. His civil action was brought pursuant to Section 1983, Title 42, U.S. Code and set forth nine claims for relief. These included (1) illegally obtaining a search warrant for a search of appellant's home in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; (2) illegally obtaining a search warrant for a search of appellant's "bodily fluids" in violation of the Fourth,Fifth, and Fourteenth Amendments to the United States Constitution; (3) a false and/or illegal arrest and imprisonment, unlawful prosecution, and the denial of appellant's right to know his accusers in violation of the Fourth, Fifth, and Sixth Amendments to the United States Constitution; (4) false arrest and imprisonment under Ohio law; (5) false, unlawful, and malicious prosecution under Ohio law; (6) intentional or negligent infliction of emotional distress; (7) knowingly subjecting appellant to false and unlawful prosecution, deceitful compilation of evidence, failure to disclose exculpatory evidence, manipulation of evidence in violation of the Ohio Constitution; (8) knowingly subjecting appellant to false and unlawful prosecution, deceitful compilation of evidence, failure to disclose exculpatory evidence, manipulation *Page 6 
of evidence in violation of the Sixth, Fifth, Ninth, andFourteenth Amendments to the United States Constitution; and (9) the city of Toledo and the Toledo Police Department caused or contributed to the wrongs perpetrated on appellant through its unconstitutional policies, customs, or practices. The defendants raised, among others, the defense of immunity pursuant to R.C. Chapter 2744.
 {¶ 11} On February 29, 1999, appellant's case was removed to the United States District Court, Northwestern Ohio Division. In May 2004, appellant dismissed his federal claims, to wit, the first, second, third, and eighth claims in his complaint. The case was returned to the Lucas County Court of Common Pleas. Over the next few years, the issue litigated in this cause was whether appellant's out-of-state counsel could be admitted pro hac vice. See Walls v. the city of Toledo,166 Ohio App.3d 349, 2006-Ohio-2111. We determined that said counsel could not be admitted[1]. Id.
 {¶ 12} Upon our remand to the trial court, the city of Toledo, the Toledo Police Department, and appellees filed a motion for summary judgment in which they argued that they were protected by the immunities provided in R.C. Chapter 2477 on the fourth, fifth, sixth, seventh, and ninth claims in appellant's complaint. They also asserted that because the Toledo Police Department is a division of the city of Toledo, the city, not the department, was the real party in interest. Appellant did not dispute this argument, conceded that the city of Toledo was immune under R.C. 2744.02, and stipulated to a judgment in favor of the city. Furthermore, appellant raises no argument on appeal with *Page 7 
regard to either the city of Toledo or the Toledo Police Department. Therefore, appellant's ninth claim in his complaint is rendered moot and shall not be addressed by this court.
 {¶ 13} On August 30, 2007, the common pleas court granted appellees' motion for summary judgment on all of plaintiff s claims, finding that appellees, as municipal employees have immunity from civil liability under R.C. 2744.03(A)(6). Appellant timely appeals that judgment and sets forth the following assignments of error:
 {¶ 14} "Whether the trial court erred by failing to view the evidence most strongly in plaintiffs favor" [sic]
 {¶ 15} "Whether the trial court erred in granting defendants' motion for summary judgment on the claim of infliction of emotional distress." [sic]
 {¶ 16} Because an appellate court reviews the grant of a summary judgment de novo, the standard applicable to both of appellant's assignments of error is found in Civ. R. 56(C). Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. The grant of a motion for summary judgment is proper when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 17} The law applicable to this cause is found in R.C. 2744.03(A)(6), as effective in December 1996, and provides: *Page 8 
 {¶ 18} "In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 19} "* * *
 {¶ 20} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or section 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 21} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 22} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 23} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
 {¶ 24} In his first assignment of error, appellant contends that the trial court failed to view the evidence offered below most strongly in his favor. He then offers "evidence," ostensibly showing that appellees distorted, manipulated, concealed, and fabricated the *Page 9 
evidence in this cause, thereby conducting a malicious prosecution and falsely arresting and imprisoning him.
 {¶ 25} To establish the tort of malicious prosecution, a plaintiff must prove: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused. Criss v. Springfield Twp. (1990), 56 Ohio St.3d 82, 84. The essence of an action for malicious prosecution is a lack of probable cause. Melonowski v. Judy (1921), 102 Ohio St. 153, paragraph one of the syllabus. If a plaintiff establishes a lack of probable cause, "the legal inference may be drawn that the proceedings were actuated by malice." Id. The person instituting the criminal proceeding is not required to have evidence that is sufficient to convict the plaintiff; rather, he is required only to have evidence that is sufficient to justify a belief that the accused is guilty of the charged offense. Id. at 156.
 {¶ 26} A claim for false arrest is not distinguishable from a claim for false imprisonment in its essential elements because each claim requires the complaining party to prove that he was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification. Evans v. Smith (1994),97 Ohio App.3d 59, 70, citing Feliciano v. Kreiger (1977), 50 Ohio St.2d 69. Consequently, "to succeed on a claim of false arrest or imprisonment, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures." Krantz v. City ofToledo *Page 10 Police Dept. (N.D. Ohio 2005), 365 F .Supp.2d 832, 837, citingMcFinley v. Bethesda Oak Hosp. (1992), 79 Ohio App.3d 613, 616.
 {¶ 27} To repeat, a trial court may grant a motion for summary judgment if it finds the following factors were established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ. R. 56(C). The initial burden of establishing that there is no material factual issue for trial falls on the party moving for summary judgment. Dresher v. Burt,75 Ohio St.3d 280, 292, 1996-Ohio-107. Once the moving party has satisfied his initial burden, the nonmoving party then has a reciprocal burden, as outlined in Civ. R. 56(E), to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Id. at 293.
 {¶ 28} Pursuant to Civ. R. 56(C), only timely filed pleadings, depositions, answers to interrogatories, written admissions, affidavits, and written stipulations of fact can be considered in determining a motion of summary judgment. Furthermore, if a document submitted by either the moving party or nonmoving party falls outside Civ. R. 56(C), the appropriate method for introducing this document is to incorporate it by reference into a properly framed affidavit. Civ. R. 56(E);Martin v. Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 89. Finally, an affidavit must be made on personal knowledge and a *Page 11 
sworn or certified copy of the document referred to in the affidavit must be attached to or served with it. Civ. R. 56(E). Where the opposing party fails to object to the admissibility of the evidence under Civ. R. 56, the court may, but need not, consider such evidence when it determines whether summary judgment is appropriate. Bowmer v.Dettelbach (1996), 109 Ohio App.3d 680, 684 (Citations omitted.).
 {¶ 29} Here, appellant never filed the partial depositions that he relied upon in the trial court. They are simply attached to his memorandum in opposition to appellees' motion for summary judgment as "Exhibits." In addition, these depositions were never sworn to or certified. Almost all of the other papers, e.g. "interviews" with John Johnson and Joann Harvey, are not certified or accompanied by an affidavit of the interviewed parties. An alleged "audio recording" of an interview with Robert Taite is likewise not properly certified and referred to in an affidavit. In short, the vast majority of appellant's "evidence" offered in opposition to appellees' motion for summary judgment does not meet the standard set forth in Civ. R. 56(C) and/or (E). Appellees objected to this evidence. Even if appellees did fail to object to any part of these documents and a recording, the trial judge was allowed to, in her discretion, either consider or disregard that evidence. Id.
 {¶ 30} This said, we now turn to the "evidence" that the trial court allegedly failed to view in a light most favorable to appellant. Appellant first asserts that the trial court mistakenly stated, in her judgment entry, that the homicides occurred on either December 2, 1996 or December 3, 1996. According to appellant, Detective Mullin, in order to *Page 12 
falsely accuse appellant of the murders, repeatedly made this misrepresentation of the time of the deaths to the trial judge when the evidence established that Thompson and Kowalczk were killed on the afternoon of December 1, 1996.
 {¶ 31} In her decision granting summary judgment to appellees, the trial judge did state: "Based upon the evidence and interviews, the investigating detectives placed the approximate date of the homicides as December 2 or 3 of 1996." The indictment charging appellant with the aggravated murders and aggravated robberies and/or aggravated burglaries alleges that these offenses occurred "[o]n or about December 1, 1996." There is no evidence in the record of this cause to establish that these offenses did occur on that date and did not occur on either December 2, or December 3, 1996. Therefore, neither Mullin nor any of the other appellees made any misrepresentation concerning the date of the deaths to the trial judge or anyone else.
 {¶ 32} Appellant next argues, as he did below, that the trial court ignored evidence of the fact that appellees "manipulated and fabricated" statements made by those individuals interviewed or interrogated during their investigation into the murders of Thompson and Kowalczk. Appellant points to the opinion of his expert, Tommy R. Alston, criticizing appellees' failure to document and validate witness statements and appellant's own statements "as would be consistent with standard police practice" during the course of their investigation. Alston is a former homicide detective, as well as a former inspector who oversaw police field duty operations, in the city of Detroit, Michigan. *Page 13 
 {¶ 33} Ignoring the fact that Alston failed to state his opinion within the reasonable degree of certainty within the particular knowledge of his professional experience, the witness statements of Joann Harvey and Cheryl Leake were signed and dated by these witnesses and incorporated into the affidavit of Detective Mullin in support of appellees' motion for summary judgment. Furthermore, the affidavit of Detective Scott Smith, who administered the polygraph examination of Joann Harvey, as incorporated into his report, finding that, upon a careful analysis of the polygraph results, it was his opinion that Harvey "told the truth to the best of her knowledge or belief." The statements of Harvey and Leake were the primary bases for the arrest and detention of appellant. Thus, if the trial court placed little or no weight on any opinion evidence offered by Alston concerning the detectives' summaries of statements made by other witnesses, said alleged failure was, at worst, harmless error. Civ. R. 61.
 {¶ 34} Appellant further maintains that the trial court failed to consider the evidence that created a genuine issue of material fact on the question of whether appellees, in particular, Detectives Mullin and Forrester, manipulated, falsified, and misrepresented the evidence gathered through their murder investigation. It also includes appellant's claim that his evidence shows: (1) that Johnson and Harvey were harassed, intimidated, and coerced into making their statements; (2) the suppression of evidence that excluded appellant as the murderer; and (3) all other evidence that supposedly shows that appellees manipulated the evidence in their investigation of the murders of Thompson and Kowalczk. This "evidence" includes appellant's affidavit, his partial *Page 14 
uncertified deposition of Joann Harvey, his partial uncertified deposition of John Johnson, the audio recording of Robert Taite, an uncertified excerpt of the deposition of Detective Leiter, Mullin's unauthenticated affidavits for search warrants, and an unauthenticated search warrant. As we previously stated, all of this "evidence," except appellant's affidavit, did not comply with the requisites of Civ. R. 56. To repeat, appellees objected to this evidence. Additionally, even in the absence of such an objection, the trial judge had the option of, in her discretion, disregarding these documents in determining appellees' motion for summary judgment.
 {¶ 35} As to appellant's affidavit, he simply asserts facts, e.g., his brother, Melvin Walls, "suffers from a mental condition," that he told to Detectives Forrester, Scott, and Mullin, but were not included in their summaries of their interviews of appellant or which were purportedly misstated by the detectives. However, none of these omitted or allegedly misstated "facts" are sufficient to create a genuine issue of material fact on any of appellant's claims. Thus, we conclude that the trial court did not abuse its discretion in according this "evidence" little or no weight.
 {¶ 36} Accordingly, the trial court did not err in finding that appellant failed to create a genuine issue of material fact on his claim of malicious prosecution. It follows that appellant's claims of false arrest/false imprisonment must, therefore, also fail because appellant failed to create a genuine issue of material fact on the element of unlawful detention without justification. As a result, appellees are immune from civil liability under R.C. 2744.03(A)(6). Appellant's first assignment of error is found not well-taken. *Page 15 
 {¶ 37} In his second assignment of error, appellant maintains that the trial court erred in granting summary judgment to appellees on his claim for intentional infliction of emotional distress. To prevail on this tort claim, a plaintiff is required to show that: (1) the alleged tortfeasor intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress; (2) the tortfeasor's conduct was extreme and outrageous; (3) the tortfeasor's action proximately caused the plaintiffs psychic injury; and (4) the mental anguish the plaintiff suffered was serious. Yeager v. Local Union20 (1983), 6 Ohio St.3d 369, syllabus.
 {¶ 38} In the instant case, the trial judge found that appellant failed to offer any evidence that he suffered any psychological injury as the result of the police investigation, his arrest, and his incarceration; therefore, she determined that his claim for intentional infliction of emotional distress (and for grossly negligent infliction of emotional distress) was without merit. On appeal, appellant asserts that the trial court misunderstood the gist of appellees' arguments on this claim and his counter arguments on the same.
 {¶ 39} In their motion for summary judgment, appellees contended that appellant could not show that Detective Mullin, who was the officer who arrested appellant, had the intent to cause appellant to suffer serious emotional distress or should have known that his actions would cause serious emotional distress. This assertion was premised on the existence of probable cause to arrest appellant, in the form of Mullin's reliance on the advice of the Lucas County Prosecutor and the Grand Jury indictment. In reply, appellant *Page 16 
merely claimed that he rebutted appellees' "presumption of probable cause created by the indictment and advise [sic] of the prosecutor." We have determined that appellant's "evidence" on his claims of malicious prosecution, false arrest, and imprisonment did not comply with Civ. R. 56 and could be disregarded by the trial court. Therefore, appellant failed to offer sufficient evidence to create a genuine issue of material fact as to probable cause and, therefore, Mullin's lack of intent to cause appellant to suffer serious emotional distress.
 {¶ 40} Moreover, even in assuming that appellant was able to create a genuine issue of material fact on the element of intent, the trial court properly determined that appellant was unable to do so on the element of serious mental anguish because he failed to offer any admissible evidence on this issue. Specifically, appellant never offered the report of his expert, P. Christian Kilger, Ph.D., or any lay testimony of persons who knew appellant, who could attest to any marked changes in his emotional or habitual makeup after his arrest and incarceration.Paugh v. Hanks (1983), 6 Ohio St.3d 72, 80. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 41} The judgment of the Lucas County Court of Common Pleas is affirmed in all respects. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 17 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR.
[1] Subsequently, the trial court did admit a second out-of-state attorney pro hac vice to represent appellant.