THE STATE OF OHIO, APPELLANT, *v.* KASSEN, APPELLEE.

324

(No. CA84-03-024—Decided
August 31, 1984.)

*George E. Pattison,* prosecuting attorney, for appellant.

*Gary Rosenhoffer,* assistant county public defender, for appellee.

JONES, J. On December 22, 1983, police and fire officials of Union Township, Clermont County, went to the residence of defendant-appellee, Glenn Kassen, in response to a telephone call received from Kassen, removed three ounces of homemade nitroglycerin from Kassen's home, and subsequently detonated it in a safe area. Kassen had made the nitroglycerin from ingredients which he obtained from local stores and called police when the substance became unstable.

On December 22, 1983, Patrolman Rick DePuccio of the Union Township Police Department filed an affidavit against Kassen charging him with possession of a dangerous ordnance, to wit, nitroglycerin, in violation of R.C. 2923.17(A), a fourth degree felony. While Kassen was in jail on the felony charge, on December 23, 1983, a separate affidavit was filed against him by Fire Marshal Paul A. Cunningham of the North Union Fire Department, charging him with criminal endangering, contrary to R.C. 2909.06(A)(2), a first degree misdemeanor. On December 27, 1983, Kassen appeared in Clermont County Court on both charges. The misdemeanor case was first heard, on a plea of no contest, at which time the court found Kassen guilty as charged, sentencing him to one hundred eighty days in jail, one hundred fifty of which were suspended. Immediately thereafter the preliminary hearing in the felony case was heard, and the court bound Kassen over to the grand jury. Kassen served his thirty-day sentence on the misdemeanor charge, and while he was still incarcerated, was indicted on the felony charge. Both charges grew out of the single course of conduct by Kassen, *i.e.,* the manufacturing and possession of the homemade nitroglycerin.

On February 24, 1984, Kassen moved that the felony charge be dismissed and that he be discharged for the reason that he had once been held in prior jeopardy for the same offense. The motion was granted by the Clermont County Court of Common Pleas on March 2, 1984, prompting this appeal by the state. For reasons hereinafter set forth, we affirm.

The issue to be decided on this appeal is whether appellee's conviction for a misdemeanor bars any subsequent felony prosecution which is premised upon the same conduct as was the misdemeanor conviction. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall be put in jeopardy twice for the same offense. *Brown* v. *Ohio* (1977), 432 U.S. 161, set aside a felony conviction on the charge of auto theft, following a prior misdemeanor conviction of joy riding, where the separate charges grew out of the same conduct. The United States Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment, applied to the states through the Fourteenth Amendment, bars prosecution and punishment for the crime of stealing an automobile following prosecution and punishment for the lesser included offense of operating the same vehicle without the owner's consent.

"The Double Jeopardy Clause 'protects against a second prosecution for

the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' *North Carolina* v. *Pearce,* 395 U.S. 711, 717 * * * (1969)." *Brown, supra,* at 165.

"The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger* v. *United States,* 284 U.S. 299, 304 (1932):

" 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. * * *'

"This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. * * *' *Iannelli* v. *United States,* 420 U.S. 770, 785 n. 17 (1975).

"If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. See *In re Nielsen,* 131 U.S. 176, 187-188 (1889); cf. *Gavieres* v. *United States,* 220 U.S. 338 (1911). Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings. Unless 'each statute requires proof of an additional fact which the other does not,' *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871), the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment." *Brown, supra,* at 166.

In reaching this decision, we are not unmindful of *Ohio* v. *Johnson* (1984), 81 L.Ed.2d 425, which reversed *State* v. *Johnson* (1983), 6 Ohio St. 3d 420. In *Johnson, supra,* the defendant was indicted on a single indictment, with separate counts for murder, involuntary manslaughter, aggravated robbery, and grand theft. At his arraignment, the trial court, over the state's objection, accepted the defendant's guilty pleas to involuntary manslaughter and grand theft, and then granted a motion to dismiss the remaining charges on the ground that their further prosecution was barred by the double jeopardy prohibitions of the Fifth and Fourteenth Amendments. The decision of the trial court was affirmed by the court of appeals and the Ohio Supreme Court. In reversing the Ohio Supreme Court, the United States Supreme Court held that prosecuting the defendant on the two more serious charges would not constitute the type of "multiple prosecution" prohibited by the Double Jeopardy Clause. *Ohio* v. *Johnson, supra,* is distinguishable, since there was a single indictment with four counts, and accordingly a single prosecution, where in the case at bar there were two separate affidavits filed against Kassen, and two separate prosecutions. In *Ohio* v. *Johnson,* the court observed that Johnson's efforts were directed to separate dispositions of counts in the same indictment, where no more than one trial of the offenses charged was ever contemplated. The court further held that the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, but the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. In the case *sub judice,* there were separate prosecutions. In *Brown* v. *Ohio,* the United States Supreme Court held that: (1) the test to be applied to determine whether there are two offenses or only one for

double jeopardy purposes, is whether one statute requires proof of a fact which the other does not; (2) double jeopardy generally forbids successive prosecutions and cumulative punishment for greater and lesser included offense, whatever the sequence; and (3) prior conviction for the lesser included offense of joy riding under the Ohio statute prohibited subsequent prosecution of defendant for the crime of auto theft.

Appellee was charged with and convicted of criminal endangering, in violation of R.C. 2909.06(A)(2), which provides that:

"No person shall cause, or create a substantial risk of physical harm to any property of another without his consent:

"* * *

"Recklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous agency or substance."

Appellee was also indicted for the unlawful possession of a dangerous ordnance which is defined in R.C. 2923.17(A) as follows:

"No person shall knowingly acquire, have, carry, or use any dangerous ordnance."

Nitroglycerin is defined by statute as being a dangerous ordnance. R.C. 2923.11(J)(3).

For purposes of demonstrating a violation of R.C. 2923.17(A) which is based on the possession of nitroglycerin, the state need not prove that nitroglycerin is a dangerous ordnance since that fact has been conclusively established by the inclusion of nitroglycerin in the statutory definition of dangerous ordnance. On the other hand, the term "inherently dangerous agency or substance" which is used in the criminal endangering statute is not statutorily defined. Appellant contends that in order to sustain a conviction under R.C. 2909.06(A)(2), it must show or prove

that nitroglycerin is an inherently dangerous substance, whereas it need not prove that nitroglycerin is a dangerous ordnance within the meaning of R.C. 2923.17(A). R.C. 1.42 provides in part that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Although there is no statutory or legislative definition for "inherently dangerous substance," case law has held that a product or substance is inherently dangerous if the danger of injury stems from the nature of the product or substance itself and not from any defect in the product. *Sams* v. *Englewood Ready-Mix Corp.* (1969), 22 Ohio App. 2d 168 [51 O.O.2d 315]. Thus, an inherently dangerous substance is one which is dangerous *per se,* an object which has in itself the potential for causing harm and destruction without requiring human intervention to produce the harmful effects.

The case at bar involves appellee's possession of nitroglycerin, an extremely powerful and dangerous explosive which assumes a highly volatile and unpredictable nature when it becomes unstable. It is, as stated in *Bradford Glycerine Co.* v. *St. Marys Mfg. Co.* (1899), 60 Ohio St. 560, 566-567, "a well known and highly explosive agency." Due to its hazardous qualities and nature, nitroglycerin has been said to be dangerous at all times, in all places, and under all circumstances. *Langabaugh* v. *Anderson* (1903), 68 Ohio St. 131; 31 American Jurisprudence 2d (1967) 763, Explosions and Explosives, Section 1.

When considering the highly hazardous nature of nitroglycerin in conjunction with the phrase "inherently dangerous" within the ordinary and particular meaning which that phrase has acquired, we hold, as a matter of law, that the state need not prove that the nitroglycerin is an inherently dangerous substance when prosecuting an accused

for a violation of R.C. 2909.06(A)(2) which is predicated upon the possession of nitroglycerin, since nitroglycerin, like other deadly weapons and dangerous ordnances is an inherently dangerous substance.[1]

Furthermore, the possession of nitroglycerin in a residential area is, in and of itself, the creation of a substantial risk of physical harm to the property and surrounding neighbors. By showing appellee's possession of nitroglycerin in a residential area, appellant would also necessarily demonstrate that appellee had created a substantial risk of physical harm to the property contiguous to his own. In addition, in order to show that appellee had recklessly created such risk by means of the nitroglycerin, the state would have to show that the substance was within appellee's possession or control and would also have to prove that appellee knowingly possessed or controlled the nitroglycerin. Taking into account the nature and qualities of the substance involved, as well as the circumstances and situation under which it was possessed, the culpable mental states required for the two offenses would be so intertwined and interrelated so as to make it impossible for appellee to act with one without the other.

In light of the facts of the case *sub judice,* we find that the two offenses involved have such a commonality of elements that the establishment of one offense does not require the proof of any element not required to be proved by the other. Accordingly, the situation presented herein falls within the double jeopardy provisions enunciated in *Brown, supra,* and *Blockburger, supra,* and the trial court was correct in granting appellee's motion to dismiss the felony charge. For these reasons, appellant's assignment of error is overruled.

*Judgment affirmed.*

HENDRICKSON, P.J., and KOEHLER, J., concur.

---

[1] In two aggravated robbery cases, *State v. Lockett* (1976), 49 Ohio St. 2d 48, reversed on other grounds (1978), 438 U.S. 586 and *State v. Johnson* (1978), 56 Ohio St. 2d 35, the Supreme Court used the term "inherently dangerous instrumentality" when referring to the handgun and sawed-off shotgun used in the respective robberies. Although neither opinion defined an "inherently dangerous instrumentality," in each case, the weapon used was described in terms of being inherently dangerous.