OPINION
This is a timely appeal from a decision of the Columbiana County Court of Common Pleas granting summary judgment in favor of Perry Township et al. ("Appellees"), and dismissing Gary Poage's ("Appellant") lawsuit claiming malicious prosecution. For the following reasons, the trial court's decision is reversed and this matter is remanded for further proceedings.
This case stems from an incident that occurred in the early morning of February 23, 1999. Appellant, a police officer with the Salem City Police Department, had worked the evening shift during the preceding evening. After work, he stopped at a local drinking establishment to share drinks with his live-in girlfriend, Debbie Manning ("Debra") and her friend Lori Kerchofer ("Lori"). (Appellant's Depo., Oct. 3, 2000, pp. 15-16). When Appellant arrived at the bar after midnight, the two women had been at the club for some time consuming alcoholic beverages. (Crim. Trial Tr. p. 271; Appellant's Depo., Oct. 3, 2000, p. 19). After a drink or two, Appellant left the bar alone and returned home, intending to spend some time on the computer before going to bed. (Crim. Trial Tr. p. 273; Appellant's Depo., Oct. 3, 2000, p. 21).
Debra and Lori remained at the bar until about 2:30 a.m. and then drove to the house Debra shared with Appellant. Debra went inside and announced that she and Lori were driving to Cleveland. (Appellant's Depo., Oct. 3, 2000, p. 23; Crim. Trial Tr. pp. 242, 273-276). Appellant attempted to stop her, arguing that the drive might be dangerous given the late hour and the fact that she and Lori had been drinking. (Appellant's Depo., Oct. 3, 2000, 23; Crim. Trial Tr. pp. 242-243, 276, 304). Dismissing Appellant's concerns, Debra left the house anyway. Lori left her car in the driveway and the two headed for Cleveland in Debra's car. Lori later reported to police that she heard the sound of gunfire as they drove away. (Crim. Trial Tr. p. 245).
They had only traveled a short distance when Appellant contacted them on Debra's cell phone. Appellant demanded that they return and threatened to have Lori's car, which was apparently blocking his truck, towed away. Lori eventually testified that Appellant had also threatened to burn her car, but her written statement to police taken just after the incident omits this information. (Officer Paulin Depo. Exh. I, p. 3).
When the women arrived back at the house, Lori saw Appellant pouring gasoline onto the front of her car. (Officer Paulin Depo., Feb. 19, 2001, Exh. I, p. 3). Appellant testified that he had poured a small quantity of gas onto the car. (Appellant's Depo., Oct. 3, 2000, Exh. A, p. 3). Lori hurried into the house and attempted to contact the police. Appellant followed her inside, snatched the phone away, and ordered her to leave. (Appellant's Depo., Oct. 3, 2000, Exh. A, p. 2). Lori complied with this demand. Whether or not Appellant physically ejected her from the house was disputed. Lori then used Debra's cell phone to contact the Perry Township police and arranged to meet them nearby. (Officer Paulin Depo., Feb. 19, 2001, pp. 15-17; Exh. I, pp. 1-3).
In response to Lori's call, the Perry Township police department dispatched Officers Donald Paulin ("Officer Paulin") and Michael Sneddon. The officers met her near Appellant's house and directed her to wait for them at the police station before they proceeded to Appellant's home. When they arrived, they found Debra sitting in her car. Appellant appeared visibly upset and was removing personal items from the house. (Officer Paulin Depo., Feb. 19, 2001, pp. 17-18).
Officer Paulin reported that when he spoke with Debra, she confirmed Lori's version of the incident. The record indicates, though, that Debra refused to give any kind of statement to the police. At Appellant's criminal trial she testified that she did not see Appellant commit the alleged misconduct charged in this case. She further testified that she told police that the incident did not happen the way that Lori had claimed. (Crim. Trial Tr. pp. 291, 298).
The officers next confronted Appellant. They claim Appellant admitted that he had been drinking, that he fired his weapon into the air repeatedly that night and that he dumped gasoline on Lori's car intending to set it on fire. (Officer Paulin Depo., February 19, 2001, pp. 36, 47-49; Exh. 1, Incident Report, February 23, 1999). Moreover, both officers reported that Appellant appeared to be intoxicated at the time. (Officer Paulin Depo., Feb. 19, 2001, pp. 39-40; Crim. Trial Tr. pp. 120-121, 198-200). Officer Paulin requested that Lori and Debra submit to personal breath tests to determine their alcohol intoxication levels. Appellant was not asked to undergo similar testing.
Appellant's account of his initial encounter with the police differed substantially from that recounted by the officers. According to Appellant, during his conversation with the officers he denied firing or using the weapon. (Appellant's Depo., Oct. 3, 2000, p. 50). Appellant did admit that he had consumed a couple of beers in the hours leading up to the incident, but denied that he was under the influence of alcohol that evening. (Appellant's Depo., Oct. 3, 2000, p. 58).
Appellant characterizes himself that night as overwrought. Appellant claims, however, that his condition was caused not by alcohol, but by his altercation with Debra. Appellant also acknowledges that he admitted to the officers that he poured a small amount of gas on Lori's vehicle, but denied that he did so with the intention of setting fire to or otherwise damaging the vehicle. (Appellant's Depo. October 3, 2000, p. 50; Exh. A; Appellant's Voluntary Statement, September 9, 1999).
Debra's brother, Randy Manning ("Manning"), was a guest at Appellant's house at the time. Manning reported that the argument between Appellant and Debra had awakened him. He was also present during Appellant's conversation with the officers. Manning's recollection of that conversation corroborates Appellant's account. Manning also denied hearing the sound of gunfire that night. (Crim. Trial Tr. pp. 310-311). According to Manning, he told Officer Paulin that he heard no gunfire that night, but the record does not reflect that Officer Paulin recorded the information, nor was Manning questioned further about what he witnessed that night. (Affidavit of Randy Manning, Appended to Memorandum in Opposition to Defendant's Motion for Summary Judgment).
Lori did not pursue criminal charges against Appellant in connection with the incident of February 23, 1999. On March 2, 1999, ten days later, Officer Paulin swore out a three-count complaint and a warrant for Appellant's arrest. Specifically, Count One of the complaint charged Appellant with aggravated menacing, in violation of R.C. § 2903.21, for allegedly causing Lori to believe that he was about to commit serious physical harm to her or her property. Under Count Two, Officer Paulin alleged that when Appellant poured gasoline on Lori's car he created the substantial risk of physical harm to the vehicle, and thus committed the offense of criminal damage to property as set forth under R.C. §2909.06. Count Three charged that Appellant used or carried a firearm while under the influence of alcohol in violation of R.C. § 2923.15. (Appellee's Brief, Exh. I). The three offenses are all misdemeanors.
The matter proceeded to a jury trial in the Columbiana County Court of Common Pleas on September 1, 1999. Both sides presented witnesses. After the parties rested, the trial court granted Appellant's motion for judgment of acquittal in accordance with Crim.R. 29. In finding that the evidence was insufficient to sustain a conviction on any count charged, the trial court was clearly troubled that, "while [Lori] came to court and testified, a police officer who really witnessed nothing is the gentleman who signed the complaint." (Crim. Trial Tr. p. 325).
The court concluded that there had been no showing that anyone's property had been criminally damaged. The court also noted that there was no proof to support the charge that Appellant had fired his weapon that evening. The trial court judge stated, "[w]ell, I heard a lot more testimony about nobody heard any shots, than I did about people who heard shots. And if you compare it with the two sets of testimony the Court had more reason to question the credibility of the police officers * * *." (Crim. Trial Tr. pp. 325-326). Ultimately the court concluded that it had no choice but to grant the motion for acquittal.
On January 29, 2000, Appellant filed a civil complaint against Appellees, Perry Township, Perry Township Trustees, Raymond Stone in his capacity as the Perry Township Chief of Police, and Police Officer Donald Paulin. In his suit, Appellant sought compensatory and exemplary damages for malicious prosecution. Appellees filed a motion for summary judgment, maintaining that Appellant could not sustain an action for malicious prosecution because he could not demonstrate that the officers lacked probable cause at the time they leveled the three criminal charges.
On February 27, 2001, the trial court granted Appellees' motion for summary judgment. The court concluded that as a matter of law Appellant could not produce sufficient evidence to establish the absence of probable cause to bring criminal charges, an essential element of a malicious prosecution claim. (Judgment Entry, p. 6, February 27, 2001).
Appellant filed his notice of appeal from that decision on March 9, 2001, and raises the following assignment of error:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT."
Appellant contends that the trial court erred when it granted Appellees' motion for summary judgment and dismissed his claim for malicious prosecution. According to Appellant, there were, "multiple questions of genuine fact," that precluded summary judgment and required the trial court to submit the case to a jury. Specifically, Appellant maintains that since Officer Paulin initiated the criminal charges without witnessing the incident that gave rise to those charges, there exists a question of fact with respect to whether he initiated those charges in the absence of probable cause. Based on the record and given the unique factual scenario presented by this case, Appellant's assignment of error has merit.
The trial court resolved this matter on a motion for summary judgment. This Court reviews de novo, without deference to the decision reached by the trial court, an order granting summary judgment. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293; Bell v. Horton (1996), 113 Ohio App.3d 363,365.
Summary judgment is a fairly drastic means of terminating litigation, which should be undertaken with caution, resolving all doubts against the moving party. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 333. Summary judgment is proper only where the court concludes, after viewing the record in a light most favorable to the nonmoving party, that there exists no genuine issue of material fact and that reasonable minds could only conclude that the moving party is entitled to judgment as a matter of law. Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301,304; Civ.R. 56(C).
The party seeking summary judgment must inform the trial court of the basis for its motion and identify the parts of the record that demonstrate that it is entitled to judgment as a matter of law. Dresher,supra, at 293. Where the initial burden is met, the nonmoving party must then demonstrate that there is a genuine issue of disputed fact for trial. Lovejoy v. Westfield Nat. Ins. Co. (1996), 116 Ohio App.3d 470,474, citing Dresher, supra, at 295. To defeat a summary judgment motion, the opposing party must present some evidence which raises a genuine issue of material fact. Nice v. Marysville (1992), 82 Ohio App.3d 109,116-117.
Appellant sued Appellees for malicious prosecution. The tort of malicious criminal prosecution allows the complainant to seek redress for harm to his dignity and reputation which occurred due to the misuse of criminal proceedings. Criss v. Springfield Twp. (1990), 56 Ohio St.3d 82,84. These claims are not favored in the law, because they may act as a restraint on one's right to resort to the courts for lawful redress.Woycznski v, Wolf (1983), 11 Ohio App.3d 226, 227 citing, Skarbinski v.Henry H. Krause Co. (6th Cir. 1967), 378 F.2d 656. In Ohio, the requirements for successful prosecution of such claims are especially stringent.
To prevail on a malicious prosecution claim, the plaintiff must prove the following elements: 1) malice in initiating or continuing the prosecution; (2) lack of probable cause to institute said proceedings; and (3) termination of the prosecution in favor of the criminal defendant.Trussell v. General Motors Corp. (1990), 53 Ohio St.3d 142, 144.
In light of Appellant's acquittal of the criminal charges leveled against him, the parties agree that the only contested elements in this case are whether Appellees acted with malice and without probable cause in instituting and pursuing these charges. The term "malice," in this context, refers to, "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Criss v.Springfield Twp., supra, at 85. Malice may be inferred where the evidence demonstrates that charges were filed without probable cause. Garza v.Clarion Hotel, Inc. (1997), 119 Ohio App.3d 478, 482; Carlton v.Davisson (1995), 104 Ohio App.3d 636, 650; and Doty v. Marquis (Sept. 22, 2000), Jefferson App. No. 99 JE 9, unreported.
The existence of probable cause is typically a factual question reserved for the jury, and the trial court may properly decide the issue only where the evidence is such that reasonable minds could come to but one conclusion. Baryak v. Kirkland (2000), 137 Ohio App.3d 704, 711. Probable cause exists when the facts and circumstances are such that a cautious individual would be warranted in the belief that the accused is guilty of the offense with which he or she is charged. Huber v. O'Neill
(1981), 66 Ohio St.2d 28, 30; and Wurth v. Emro Marketing Co. (1998),125 Ohio App.3d 494, 505.
Probable cause is presumed to exist where there is a prior judicial finding that the accused committed the charged offense. Adamson v. MayCo. (1982), 8 Ohio App.3d 266, 268. A grand jury indictment, for example, is prima facie evidence of probable cause. McIver v. City ofYoungstown (Mar. 1, 1990), Mahoning App. No. 88 CA 205, unreported;Reinoehl v. Trinity Universal Ins. Co. (1998), 130 Ohio App.3d 186, 196;Roque v. Taco Bell, Inc. (Feb. 10, 2000), Cuyahoga App. No. 75413, unreported.
Whether or not the accused actually committed the crime is not pertinent to the probable cause determination. Finn v. Village of Amelia
(March 27, 1989), Clermont App. No. CA88-10-073, unreported. A police officer may have probable cause even in circumstances where it is eventually decided that no crime actually occurred. Further, there is no requirement that an individual who institutes a criminal action possesses evidence that ensures a conviction. Deoma v. Shaker Heights (1990),68 Ohio App.3d 72, 77, citing Epling v. Pacific Intermountain ExpressCo. (1977), 55 Ohio App.2d 59, 62.
To determine whether a criminal prosecution was initiated improperly, this Court must look to the information that prompted the decision to prosecute. Mayes v. Columbus (1995), 105 Ohio App.3d 728, 737. In the instant case, this analysis depends on whether Officer Paulin had reasonable justification to charge Appellant with the offenses of aggravated menacing, criminal damage to property and carrying or using a firearm while under the influence of alcohol. If the record, viewed in a light most favorable to Appellant, demonstrates a genuine factual dispute with respect to Officer Paulin's decision, then summary judgment in Appellees' favor was granted erroneously.
The offense of aggravated menacing as defined under R.C. § 2903.21
occurs where one person knowingly causes another to believe that he or she will do serious physical harm to that person or property. Generally, to convict someone for this offense, the prosecution must show that the accused either physically or verbally threatened harm to the victim or the victim's property. State v. Fields (1992), 84 Ohio App.3d 423, 427.
The offense of criminal damaging or endangering prohibits an individual from causing or creating a substantial risk of physical harm to any property of another without the other person's consent either: (1) knowingly, by any means; or (2) recklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous agency or substance. R.C. §2909.06(A)(1) (2).
To be found guilty of criminal damaging, the prosecution must prove that the accused caused or created a substantial risk of harm to the property of another. State v. Hayes (Sept. 30, 1999), Ashtabula App. No. 97-A-00667, unreported at p. 9. One who pours nitroglycerin on a vehicle would be guilty of criminal damaging. State v. Kassen (1984),20 Ohio App.3d 323. Similarly, a defendant who scratched the body of a vehicle with a key or broke its windshield would also be guilty of this offense. See, State v. Russell (1990), 67 Ohio App.3d 81; and State v.Howdyshell (August 29, 1997), Ashtabula App. No. 96-A-0064, unreported.
The offense of using and carrying a firearm while intoxicated is codified in R.C. § 2923.15. This section prohibits the use or carrying of any firearm or dangerous ordnance while under the influence of alcohol or any drug of abuse. The General Assembly enacted this law to prevent accidental shootings by those impaired by drugs or alcohol. Statev. Waterhouse (Feb. 16, 1995), Belmont App. No. 93-B-26, unreported.
When it granted Appellees' summary judgment motion, the trial court ruled that Officer Paulin had probable cause to charge and arrest Appellant for each of the aforementioned offenses as a matter of law. In so doing, the court had before it: (1) the transcript of the criminal trial; (2) the depositions of Officer Paulin, Chief Raymond Stone of the Perry Township Police Department and Appellant; (3) the affidavits of Debra and Randy Manning; and (4) several handwritten statements and police reports relating to the police investigation of the incident admitted as exhibits during the depositions.
In its written judgment entry granting summary judgment, the trial court acknowledged that the record presented a, "dispute as to what the Plaintiff told Officer Paulin and other police officers about his participation in the events that led up to the filing of the criminal charges." (Judgment Entry, February 27, 2001, p. 1). The court resolved that this factual "dispute" by considering only what it characterized as the, "undisputed evidence and the objective evidence," in reaching summary judgment. As a consequence, the trial court states that it, "discounted all but the evidence of an objective nature and evidence that the Plaintiff and Defendants agree upon," when it granted Appellees' motion for summary judgment. (Judgment Entry, February 27, 2001, pp. 1-2). In so doing, the trial court was actually weighing the evidence before it, which is improper in summary judgment and is usually the first signal that it is not warranted.
Where resolution of material factual issues depends upon whether the trier of fact believes the plaintiff or the defendant, "summary disposition of a malicious prosecution claim is inappropriate." Nowellv. Cincinnati, 133 Ohio App.3d 790, 810; citing, Evans v. Smith (1994),97 Ohio App.3d 59, 69.
In Nowell, the complainants filed suit against a municipality alleging numerous claims, including malicious prosecution. The plaintiffs, sidewalk ticket scalpers, were arrested by police and charged with a variety of municipal violations. One of the charges was later dismissed and the plaintiffs were acquitted on the rest. In their ensuing civil suit, the plaintiffs maintained that the police had arrested them for conduct that was not illegal.
As in the matter before us, the trial court in Novell granted summary judgment in favor of the municipality. The court of appeals reversed. In doing so, it observed that while, "[o]bviously the testimony of the police officers supports a finding of probable cause, the testimony of the plaintiffs, however, does not." Id. at 811. Given the fact that resolution of the factual dispute in Novell depended upon which witness was more believable, the court concluded that summary judgment was improper. An examination of the record in the instant case reflects a similar dilemma.
According to Officer Paulin, he and Officer Sneddon were dispatched to Appellant's home in response to Lori's complaint. He met Lori near Appellant's house and she told him that Appellant had, "poured gasoline all over her car and threatened to set it on fire." (Officer Paulin Depo., Feb. 19, 2001, p. 43). Officer Paulin noted that the trunk and roof of Lori's car had been saturated with gasoline. (Crim. Trial Tr. p. 118).
Lori also told Officer Paulin that she heard what she thought was the sound of gunfire as she and Debra pulled away from Appellant's house on their way to Cleveland. (Crim. Trial Tr. p. 246). According to Officer Paulin, when he arrived at Appellant's home that night, Appellant invited him inside and then essentially admitted to all of the misconduct alleged in Officer Paulin's criminal complaint. (Crim. Trial Tr. p. 92-93; Officer Paulin Depo., Feb. 19, 2001, pp. 39-45, 52, 60-61).
Appellant, on the other hand, disputes most of the account reported by Officer Paulin. He denied that he told police he had fired his gun that night. (Appellant's Depo., Oct. 3, 2000, p. 43). He denied threatening to burn Lori's car, but admitted that he had poured the vestiges of a nearly empty can of gasoline onto the front of her vehicle. (Appellant's Depo., pp. 34-35, 36-37). He testified that he only did so because he was upset.
These two accounts are not only inconsistent, they contradict each other in almost every respect. More troubling, the dispute here involves more than just the arrestee's word against the victim and the police officer. Were that the case, as it is in many domestic altercations, this matter would be easier to resolve. In the case before us, however, there are other witnesses to this incident who add to the factual dispute by lending credence to the accounts offered by both sides. While Officer Sneddon, Paulin's partner, corroborates Officer Paulin's account of what happened that night, Randy and Debra Manning plainly discredit it. Under the circumstances, there is obviously a profound factual dispute in this case, the outcome of which necessarily depends on the credibility of the witnesses and the plausibility of their various accounts.
The record demonstrates that the trial court resolved this case on summary judgment by accepting Appellees' version of the incident at the expense of the contradictory version Appellant proposed. The trial court attempted to justify its decision with the following remarks:
 "Admittedly, most of these charges turn on the testimony of Kerchofer and the Plaintiff and the officers. But were this Court to sit in a preliminary hearing or probable cause determination and heard the testimony of Kerchofer and Paulin and Sneddon laying out the facts listed above, it would have no problem in finding that there was probable cause for these offenses." (Judgment Entry, Feb. 27, 2001, p. 6).
These remarks clearly indicate, however, that the trial court was improperly weighing the evidence.
Because the charges filed in this case were misdemeanors, there was no preliminary hearing or grand jury indictment. The judge who presided over the criminal trial did hear the officers' testimony. At the conclusion of trial, after hearing the testimony of all the witnesses, the criminal trial judge concluded that he, "had more reason to question the credibility of the police officers * * *," than that offered by the other witnesses to this occurrence. (Crim. Trial Tr. p. 325).
It is true that Appellant's actual guilt or innocence is not pertinent to a probable cause determination. Probable cause is based exclusively on the information that was available to the officer at the time he undertakes to arrest and/or charge a defendant. Huber v. O'Neill (1981),66 Ohio St.2d 28, 39-30.
Viewed in isolation, Officer Paulin's account undoubtedly demonstrates that he had probable cause to arrest and charge Appellant. That account, however, is entirely dependent on the officer's credibility. The record demonstrates that Officer Paulin's credibility was undermined by the testimony of Appellant and his witnesses.
Construing the evidence in the record in a light most favorable to Appellant, it is apparent that genuine issues of material fact exist as to the issue of probable cause to arrest and charge Appellant. Accordingly, this case was not properly resolved on summary judgment.
In light of the foregoing, the trial court judgment is reversed and this cause is remanded for further proceedings according to law and consistent with this Court's opinion.
Donofrio, J., concurs.
Vukovich, P.J., concurs.