Matsuralla FORD, Petitioner–
Appellant,

v.

COUNTY OF OAKLAND, and John
Nichols, Oakland County Sheriff,
Respondents–Appellees.

No. 00–2140.

United States Court of Appeals,
Sixth Circuit.

May 13, 2002.

Before MARTIN, Chief Circuit Judge;
COLE, Circuit Judge; and SHARP,*
District Judge.

OPINION

COLE, Circuit Judge.

This action stems from the alleged rape of a nineteen year-old female prisoner incarcerated in a county jail by the police deputy who was supervising her. The prisoner, Plaintiff–Appellant Matsuralla Ford, argues that Defendant–Appellee Oakland County is liable as a municipality under 42 U.S.C. § 1983 for maintaining a custom and policy of ignoring sexual harassment and assault claims and creating an atmosphere that facilitated her

* The Honorable G. Kendall Sharp, United States District Judge for the Middle District of Florida, sitting by designation.

rape. Ford now appeals from the district court's grant of Oakland County's motion for summary judgment under Fed. R. Civ. P. 56 on her § 1983 municipal liability claim.

This appeal presents one issue for our review: (1) Whether the district court properly granted summary judgment to Oakland County on the ground that Ford failed to satisfy the elements of her claim for municipal liability under 42 U.S.C. § 1983. We conclude that the district court properly granted summary judgment and, accordingly, we AFFIRM that judgment.

## I. BACKGROUND

### A. Factual Background

Matsuralla Ford was incarcerated at the Oakland County Jail[1] on August 18, 1997 for possession of a controlled substance. She has a severe mental impairment and a history of mental illness, and was placed into a secure section of the facility after a suicide attempt on August 20, 1997. In late September, 1997, Ford alleges that Mark Miles,[2] an Oakland County deputy sheriff and a supervisor of the jail, initiated a pattern of sexual harassment and assault. On September 24, 1997, Miles began harassing Ford, flirting and commenting on her body. On September 25, 1997, Miles returned to Ford's cell, radioed another deputy to open the cell, and digitally penetrated Ford. Miles returned yet again the next day, on September 26, 1997, relieved another deputy for a dinner break, and ordered a lock-down of all cells except that of Ford. Miles then entered Ford's cell, ordered her to face the wall, and had vaginal intercourse with her. He ejaculated on her buttocks and forced Ford to clean it up. After Miles left the cell, Ford wiped the semen with a napkin, put it into a plastic bag, and gave it to Felicia Davis, a fellow inmate, for safekeeping.

Ford did not report the assault until October 8, 1997, when she relayed the circumstances of the rape to Deputy Leudith Perkins, a female corrections officer at the jail. Perkins wrote an incident report detailing Ford's allegations, and Oakland County began an investigation into the alleged assault.[3] The record is not clear to what degree this was a serious investigation—Ford alleges that the Sheriff's Office initiated a cover-up of the assault, and interviewed only those officers who were not near Ford's cell when the assault occurred. She also alleges that the Sheriff's Office never followed up with her regarding the assault during the investigation. The Sheriff's Office report ultimately exonerated Miles and recommended the

---

1. The Oakland County Jail is operated by the Oakland County Sheriff's Office.

2. Mark Miles was a defendant in this action before the district court. However, Ford settled her claim against Miles in his individual capacity. Accordingly, the August 23, 2000 order of the district court granted summary judgment in favor of defendants Oakland County and John Nichols—not Miles. A show cause order was issued on October 11, 2000 that questioned whether we have jurisdiction to resolve the appeal since the district court had not entered a final judgment against Miles. Ford then informed the district court of her settlement with Miles, and on October 30, 2000 the district court entered an order dismissing with prejudice the claims against Miles. On November 15, 2000, this Court noted that it had jurisdiction to proceed with the appeal and withdrew the show cause order.

3. Deputy Perkins testified that after filing her initial report of the incident, she received harassing phone calls at home and, while on duty, was harassed over the jail's radio system, ostracized from her co-workers, accused of having oral sex with Miles, and physically assaulted by her fellow deputies.

prosecution of Ford and two other inmates for filing a false felony police report.

The Michigan State Police launched an investigation into the rape incident on October 24, 1997 after the sister of another inmate lodged a complaint. Several of the inmates offered competing stories regarding the origin of the sperm sample in the plastic bag, but DNA testing of the sperm sample ultimately confirmed that it belonged to Miles, with some of Ford's DNA also present.[4] Ford also passed a polygraph test regarding the alleged assault. The report that followed this investigation confirmed in large part Ford's claim of assault.

As a result of the Michigan State Police investigation, Miles was suspended without pay on August 20, 1998 pending the resolution of criminal charges that were brought against him by the Oakland County Prosecutor's Office. Miles ultimately pleaded guilty to a lesser included offense.

Ford filed her § 1983 civil rights lawsuit on October 20, 1998. During the discovery phase of the suit, one inmate, Helen Alexander, claimed that it was commonplace at the Oakland County Jail for deputies to have sex with inmates. In response, the Oakland County Sheriff's Office turned over four complaints of alleged sexual misconduct on the part of deputy sheriffs for the three years prior to the incident at issue here. Of these cases, three of the deputy sheriffs received disciplinary action after an internal investigation, and one allegation was determined to be unfounded. Oakland County also alleges that it has a strict policy against sexual harassment and sexual misconduct on the part of any deputy sheriff.

### B. Procedural History

Ford filed a 42 U.S.C. § 1983 suit alleging that Oakland County, Oakland County Sheriff John Nichols, and Oakland County Deputy Mark Miles violated her Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution. Oakland County and Sheriff Nichols sought summary judgment on May 1, 2000. After oral argument on June 20, 2000, the district court granted summary judgment on August 23, 2000. Miles subsequently agreed to a monetary settlement with Ford for dismissal of the claim against him; the district court dismissed Miles from the § 1983 suit on October 30, 2000. Ford then filed a timely appeal of the district court's grant of summary judgment.

## II. DISCUSSION

### 1. Standard of Review

Dismissal of a suit for failure to state a claim under a Rule 56 motion for summary judgment is subject to *de novo* review. *E.E.O.C. v. Univ. of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). The district court's grant of summary judgment should be affirmed unless there was a genuine issue for trial, such that enough evidence exists for a reasonable juror to rely on in finding for plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This standard is met if: (1) the district court applied proper law; (2) the district court made no errors applying the law to the facts; and (3) there are no genuine issues of material fact. *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir.1998).

---

**4.** During the Oakland County investigation, Felicia Davis claimed that the sperm sample in the plastic bag belonged to her, and that it was the product of an assault by Miles on her and not Ford. This account was later determined to be false.

## 2. Analysis

■ Ford submits that she has satisfied the elements of her claim for municipal liability against Oakland County under 42 U.S.C. § 1983 and that the district court improperly granted Oakland County's motion for summary judgment. A municipality or county may be sued for § 1983 liability for a constitutional violation. *Fox v. Van Oosterum,* 176 F.3d 342, 348 (6th Cir.1999). It is a separate inquiry to establish whether a constitutional violation occurred, and whether a municipality bears responsibility. *See Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The easier question is whether a constitutional violation occurred. Our precedent recognizes a clearly established fundamental substantive due process right "to personal security and to bodily integrity," extending specifically to the right to be free from sexual abuse. *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 506 (6th Cir. 1996). Moreover, where the state imposes a special relationship upon a person, such as when that person is held in custody, then the state owes a special duty of protection against violation of her due process rights. *See L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992) (citing *Youngberg v. Romeo,* 457 U.S. 307, 314–25, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)).

The second and more difficult element to establish is whether Oakland County bears responsibility under 42 U.S.C. § 1983 for Miles's sexual assault on Ford. *See Collins,* 503 U.S. at 121, 112 S.Ct. 1061. A respondeat superior argument, based solely on an employer-employee relationship with a tortfeasor, is not enough to hold the county or municipality liable. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff must be able to "identify a government 'policy' or 'custom' that caused the plaintiff's injury," and the municipality through this policy must have been the "'moving force' behind the injury alleged." *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403–404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). The violation may be visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels. *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018. However, the custom must be "permanent and well settled [so] as to constitute a custom or usage with the force of law." *Claiborne County,* 103 F.3d at 507. The notion of law must include "[d]eeply embedded traditional ways of carrying out state policy," and reflect a course of action deliberately chosen from among various alternatives. *Id.* at 507–08 (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 84 L.Ed. 1254 (1940), and citing *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

Ford fails to satisfy all the elements necessary to establish municipal liability under § 1983 against Oakland County. Ford has little difficulty establishing that her constitutional rights were violated as a result of the sexual assault. *See Doe,* 103 F.3d at 506. Not only was her fundamental substantive due process right "to personal security and to bodily integrity" violated, but she was owed a special duty to be protected from constitutional harm because she was in custody. *Id.; see also Grubbs,* 974 F.2d at 121.

■ It is under the second element that Ford falls short, particularly given the high standard for establishing municipal liability under § 1983. Ford simply does not present enough evidence in her complaint or memorandum in opposition to summary judgment to create a genuine issue of material fact as to whether Oak-

land County has a "custom or usage with the force of law" of creating an atmosphere that facilitated the violation of her constitutional rights. *See Claiborne County,* 103 F.3d at 507. Oakland County did have a policy against sexual harassment, it did discipline Miles after the results of the Michigan State Police report became available, and it did proffer evidence of three other cases in which officers were disciplined for sexual harassment and assault in the Oakland County Jail. Ford makes a number of accusations about a cover-up in Oakland County's investigation of the sexual assault, but offers no evidence to this effect other than the fact that Miles was not suspended from duty after the Oakland County Sheriff's Office had completed its investigation, and that further action did not take place until the Michigan State Police's report was finalized. Ford may not be responsible for the fact that other inmates gave alternate accounts of assault that conflicted with Ford's version in order to garner their own settlement with Oakland County, but this did make Oakland County's investigation much more difficult and less likely a cover-up. Finally, the comments Deputy Perkins received after filing her initial report of the assault do not support an inference of a policy of harassment on the part of the Oakland County Sheriff's Office.

Ford cites to the Ninth Circuit's *L.W. v. Grubbs,* which allows for § 1983 liability where an officer affirmatively creates the particular danger that exposed a party to violence. 974 F.2d at 121–22. *Grubbs* involved a registered nurse who was raped and terrorized by an inmate at a medium security custodial institution after her supervisors created the dangerous situation that resulted in her assault. *Id.* This case is more on point to the present situation than the district court concedes; the fact that an inmate was the tortfeasor rather than a prison guard as in this case does not make the precedent inapposite. *See Slayton v. Ohio Dep't of Youth Servs.,* 206 F.3d 669, 678 (6th Cir.2000). In both *Grubbs* and the case before us, an officer potentially created the particular danger that exposed the victim to the assault. *Grubbs,* 974 F.2d at 121. However, the key distinction between *Grubbs* and this case is that Ford has simply not documented the policies and customs of the Oakland County Jail that support an atmosphere that facilitated her rape. *See Claiborne County,* 103 F.3d at 507. Absent this, or any affidavits or evidence showing that Miles was improperly trained, that Oakland Country disregarded a known risk, acted with deliberate indifference, or failed to investigate allegations of abuse, Ford falls far short of the standard necessary to raise a genuine issue of material fact sufficient to survive a motion for summary judgment. *See Poe,* 143 F.3d at 1016.

### III. CONCLUSION

For the foregoing reasons, this Court AFFIRMS the judgment of the district court.