OPINION
{¶ 1} Kimaru Watenza appeals from the decision and entry of the Common Pleas Court of Montgomery County granting summary judgment in favor of the City of Dayton (the "City") and Dayton Police Officers Michael Saylors, Chris Cornwell, Shawn Huey, and Brian Johns (collectively, the "officers").
 {¶ 2} The record in the trial court reveals that on May 20, 2005, United States *Page 2 
Magistrate Judge Michael R. Merz issued an arrest warrant for Ayo Watenza, Appellant's son, for possession of approximately $17,000.00 in counterfeit United States currency. United States Secret Service Agents Brad Mercer and Jason Boswell were charged with executing the warrant.
 {¶ 3} Having learned that Ayo Watenza lived at Appellant's residence at 1200 West Grand Avenue in Dayton, Ohio, Agents Mercer and Boswell proceeded to execute the arrest warrant on June 7, 2005. Early in the afternoon, the agents, along with Resident Agent in Charge Todd Bagby and several Dayton Police Officers, knocked on the door of Appellant's residence. A man matching the description of Ayo Watenza answered. Agent Mercer addressed the man as Ayo Watenza, to which he responded, and the agent informed him that he was under arrest for counterfeiting. The man was handcuffed and taken to the Dayton Secret Service Office.
 {¶ 4} At the office, the man, for the first time, told Agent Mercer that he was Ayo Watenza's identical twin brother, Sanyu. Thereafter, he was fingerprinted and positively identified as Sanyu Watenza. Agents Boswell and Bagby then drove Sanyu back to the residence at 1200 West Grand Avenue.
 {¶ 5} In the meantime, Agent Mercer called Ayo Watenza on the cell phone number given to him by Sanyu. Agent Mercer told Ayo that he had an outstanding federal arrest warrant, to which Ayo responded he would come to the Secret Service Office immediately. Agent Mercer also called the residence at 1200 West Grand Avenue. He spoke to Appellant, informing him that there was a federal arrest warrant for his son, Ayo, and that he was attempting to locate him. According to Agent Mercer, Appellant told him that he would "get Ayo and bring him to the Secret Service Office." *Page 3 
(Mercer Aff., Defs.' Ex. 1, at]}12.) Appellant, however, denies making this statement. (Watenza Dep. at 31.)
 {¶ 6} Agent Mercer left several additional messages on both Ayo's cell phone and the home telephone when neither Ayo nor Appellant appeared at the Secret Service Office. None of these messages was returned. Furthermore, Dayton Police Officer Greg Mills informed Agent Mercer that during this time, Appellant had picked up Ayo at the Dayton Barber College in the appellant's car.
 {¶ 7} Subsequently, Agents Mercer and Boswell returned to 1200 West Grand Avenue. Agent Mercer testified in his affidavit that upon discovering Appellant's vehicle was not there, he and Agent Boswell left to search for it at other locations. Later that evening, the agents went back to the residence and found that the vehicle had also returned. The agents then watched the home to see if Ayo came or went while waiting for back up from Dayton Police Officers to execute the arrest warrant. Agent Mercer further testified that while they were watching the house, Agent Boswell saw what he believed was a black male without a shirt pass by a basement window. Mercer had previously learned from Ayo's ex-girlfriend that Ayo slept in the basement.
 {¶ 8} When the officers arrived, Agent Mercer told them the following:
 {¶ 9} "I told the Dayton Police Officers that we had an arrest warrant for Ayo Watenza for counterfeiting. We also were aware that he had previously been involved in criminal activity involving weapons violations. I told the Officers that I knew Ayo lived at 1200 W. Grand Avenue and that I had information that he slept in the basement. I also told the Dayton Police Officers that I had spoken with Ayo Watenza's father, Kimaru Watenza, earlier in the day and that Kimaru Watenza had told me that he would *Page 4 
pick up Ayo and bring him to the Secret Service Office. I also told the Dayton Police Officers that Kimaru Watenza never brought Ayo Watenza to the Office, despite the fact that I had left several messages with him and that no one had called me back. I also told the officers that I learned that Kimaru Watenza had picked up Ayo in Kimaru's vehicle from the Dayton Barber College. I told them that upon learning this we looked for Kimaru's vehicle at 1200 W. Grand Avenue and other locations and could not find it. However, upon returning to 1200 W. Grand Avenue we saw the vehicle and began watching the house. Finally, I told the DaytonPolice Officers that we had been watching the house and did not see Ayoleave and also that Agent Boswell had seen a black male in the basementthat he believed to be Ayo Watenza." (Emphasis added.) (Mercer Aff., Defs.' Ex. 1, at 1J20.)
 {¶ 10} Appellant points out that Agent Mercer's affidavit testimony regarding when Agent Boswell saw the black male in the basement window and when Agent Mercer informed the officers of such observation is inconsistent with the agent's testimony at a July 29, 2005 suppression hearing. At that hearing, Agent Mercer testified that the officers had already arrived on the scene and were approaching the house to execute the warrant before Agent Boswell noticed the black male in the basement:
 {¶ 11} "Prior to knocking several of us were assigned to different sides of the house and when we walked up we instructed people to look to try and see if you see a person, Ayo, or someone matching his description inside and [Agent Boswell] indicated to me prior to me knocking on the door that he saw what he believed was a black male without a shirt walking around his basement, which is an area that we previously had *Page 5 
been told where Ayo's bedroom was located." (Tr. of Suppression Hr'g, Pl.'s Ex. 4, at 8.) Agent Boswell's testimony confirms this statement, indicating that he observed the image in the basement window as the agents and officers were approaching the house. (Id. at 19.)
 {¶ 12} At this point in executing the arrest warrant, the agents and officers knocked on the door of 1200 West Grand Avenue and made contact with Appellant. Agent Mercer informed Appellant that they were looking for Ayo. In response, Appellant stated that Ayo was not at home and that he was at Good Samaritan Hospital. Despite Appellant's statement, Agents Mercer and Boswell, Officer Chris Cornwell, and Sergeant Brian Johns entered the house and began their search. The agents and officers proceeded with their weapons drawn because of the nature of the crime and Ayo's criminal history, which included a weapon's violation. Agent Mercer instructed Appellant to remain in the foyer, but Appellant refused. Sergeant Johns testified in his affidavit that Appellant argued with the agents and officers, asserting that it was his house and he could do whatever he wanted. Sergeant Johns further testified that Appellant was "loud, belligerent and his actions were erratic." (Johns Aff., Defs.' Ex. 2, at ¶ 5.) According to Sergeant Johns, Appellant followed the officers to the basement while yelling, "`He's not in the basement.'" (Id. at ¶ 6.) Sergeant Johns provided that this behavior appeared to be a warning for any individual who might be in the basement, in addition to creating a dangerous situation for the agents, officers, and the appellant himself.
 {¶ 13} Because Appellant refused to remain in the foyer as instructed by Agent Mercer, Sergeant Johns handcuffed him and waited with the appellant in the kitchen *Page 6 
while the other officers conducted the search.
 {¶ 14} Ayo Watenza was not found during the search of the residence. However, because of his conduct, Appellant was arrested for obstructing official business and immediately escorted to the Montgomery County Jail.
 {¶ 15} The matter was prosecuted in the Dayton Municipal Court. Appellant moved to suppress the evidence and dismiss the charges on the grounds that the search of his residence was illegal. On July 29, 2005, a suppression hearing was held. There, Agent Mercer testified the he believed Ayo Watenza was inside the house because (1) Appellant had agreed to pick up Ayo and take him to the Secret Service Office; (2) upon failing to appear at the office, Agent Mercer learned that Appellant had in fact picked Ayo up from the Dayton Barber College; and (3) Agent Mercer assumed the two were still together at the residence. Agents Mercer and Boswell further testified that Agent Boswell had seen a black male pass by the basement window of the home when the agents and officers were approaching the house. See supra. Agent Boswell additionally provided that the black male matched the general description of Ayo; however, on cross-examination, he agreed that the only matching characteristic was that the person was a black male. He also admitted that the basement window was approximately one foot by two and one-half feet in size, it was dirty, and the only lighting was back lighting coming through the stairs. Based on the testimony at this hearing, the trial judge dismissed the charges against Appellant, finding that the evidence was "clearly insufficient * * * to show that there was reason to believe that the suspect that [the agents and officers] were looking for was actually in the premises in question." (Tr. of Suppression Hr'g, Pl.'s Ex. 4, at 24.) *Page 7 
 {¶ 16} Appellant thereafter filed the instant lawsuit, alleging the following five causes of action: Count I — illegal search and seizure; Count II — illegal arrest; Count III — malicious prosecution; Count IV — false arrest; and Count V — false imprisonment. On September 26, 2006, Appellant filed a motion for partial summary judgment. On the same date, the City and the officers filed a motion for summary judgment.
 {¶ 17} Pursuant to his motion, Appellant argued that the doctrine of collateral estoppel precluded the defendants from relitigating the issue already determined by the Dayton Municipal Court — whether the agents and officers entered Appellant's home illegally. Appellant therefore contended that summary judgment should be granted in his favor against the defendant-officers as to Count I, illegal search and seizure.
 {¶ 18} In contrast, the City and the officers alleged in their motion that the agents and officers had a reasonable belief that Ayo Watenza was at the residence at the time of the search based upon the information known and the observations made prior to executing the arrest warrant. They further asserted that there was probable cause to arrest Appellant for obstructing official business because he impeded the search for Ayo and he intentionally deceived the officers and agents by transporting Ayo to a location other than the Secret Service Office. In addition, the defendants argued that the officers were entitled to qualified immunity and that Appellant failed to establish a § 1983 complaint against the City. Finally, they contended that Appellant failed to demonstrate a prima facie case of malicious prosecution.
 {¶ 19} Responding to Appellant's motion that they were precluded from raising the issue of whether a reasonable belief existed that Ayo was at the residence at the time of the search, the defendants cited Potts v.Hill (C.A.6, 2003), 77 Fed.Appx. 330. *Page 8 
There, the Sixth Circuit Court of Appeals held that "a § 1983 plaintiff cannot use issue preclusion against his arresting officers in evaluating the constitutionality of the arrest even if the state court that acquitted the plaintiff found that a constitutional violation took place." Id. at 335. The court relied upon the Supreme Court of Ohio's standard for applying issue preclusion to find that privity did not exist between the plaintiff and defendant-officers because the officers' interests in a § 1983 civil action differed from the interest of the government in the prior criminal proceeding, and the officers had no control over the trial strategy during the criminal proceeding.[1] Id. at 334. The trial court in the present matter agreed, denying Appellant's Motion for Partial Summary Judgment on December 6, 2006.
 {¶ 20} Approximately two weeks later, the trial court granted the defendants' Motion for Summary Judgment. It is from this decision that Appellant has filed a timely notice of appeal, assigning the following errors for our review:
 {¶ 21} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES SAYLORS, CORNWELL, HUEY, AND JOHNS AS THEY DID NOT HAVE A REASONABLE BELIEF SUFFICIENT TO JUSTIFY ENTERING AND SEARCHING APPELLANT'S HOME TO EXECUTE AN ARREST WARRANT.
 {¶ 22} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES CITY OF DAYTON, SAYLORS, CORNWELL, HUEY, AND *Page 9 
JOHNS AS THEY ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR THE ENTRY AND SEARCH OF APPELLANT'S HOME.
 {¶ 23} "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE JOHNS AS HE DID NOT HAVE PROBABLE CAUSE TO ARREST APPELLANT.
 {¶ 24} "IV. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE JOHNS AS HE IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR THE ILLEGAL ARREST OF APPELLANT.
 {¶ 25} "V. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES CITY OF DAYTON, SAYLORS, CORNWELL, HUEY, AND JOHNS AS TO APPELLANT'S CLAIMS OF MALICIOUS PROSECUTION, FALSE ARREST, AND FALSE IMPRISONMENT."
 {¶ 26} As an appellate court, our review of trial court decisions on summary judgment is de novo, which means that "we apply the standards used by the trial court." Brinkman v. Doughty (2000),140 Ohio App.3d 494, 496, 748 N.E.2d 116. Trial courts will appropriately grant summary judgment where they find "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73,375 N.E.2d 46.
 {¶ 27} Upon review of the record, we find that Appellant's assignments of error *Page 10 
are without merit. Accordingly, the judgment of the trial court will be affirmed.
 I. Appellant's First and Second Assignments of Error {¶ 28} In his first assignment of error, Appellant contends that the trial court erred in finding that the officers had a reasonable belief that Ayo Watenza was in his home when they entered and conducted their search pursuant to an arrest warrant. Specifically, Appellant alleges that the trial court failed to construe the evidence in his favor, as is required on summary judgment, in addition to ignoring factual disputes in the appellees' evidence.
 {¶ 29} In Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371,63 L.Ed.2d 639, the United States Supreme Court held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id. at 603. Reasonable belief, according to the Sixth Circuit Court of Appeals, "is established by looking at common sense factors and evaluating the totality of the circumstances." United States v. Pruitt (C.A.6, 2006), 458 F.3d 477,482, citing United States v. McKinney (C.A.6, 1967), 379 F.2d 259;United States v. Magluta (C.A.11, 1995), 44 F.3d 1530; Valdez v.McPheters (C.A.10, 1999), 172 F.3d 1220. For example, an anonymous tip that the suspect had been seen at the subject residence several hours prior to the call, coupled with a photo identification of the suspect and an assertion that he was in the residence at that time selling drugs was sufficient to form a reasonable belief that the suspect was on the premises. Pruitt, 458 F.3d at 483.
 {¶ 30} Here, Appellant argues that the trial court discounted the factual *Page 11 
inconsistencies in Agent Mercer's testimony when it found that the officers could reasonably have believed that Ayo Watenza was at Appellant's home when they searched the premises. Admittedly, there is an inconsistency between Agent Mercer's testimony at the July 2005 suppression hearing and his affidavit attached to the appellees' Motion for Summary Judgment. At the hearing, Agent Mercer testified, in part, that a reasonable belief for Ayo Watenza's presence was based on the fact that Agent Boswell observed a black male pass by the basement window of the house. According to Agent Mercer, this observation was made at the time the agents and officers were approaching Appellant's home to execute the warrant. From these facts, one might infer that the officers made their decision to search the residence without having knowledge of Agent Boswell's observation. In contrast, Agent Mercer testified in his subsequent affidavit that Agent Boswell saw the image in the basement window prior to the officers' arrival. Consequently, Agent Mercer stated that he was able to relay this information to the officers, in addition to other factors, before they executed the arrest warrant. As to this testimony, Agent Boswell's observation was available to the officers when considering whether they had reason to believe Ayo was inside the home.
 {¶ 31} However, we believe this inconsistency is not material to the outcome of whether it was objectively reasonable for the officers to search Appellant's residence. Appellees cite to a number of cases from different circuits to demonstrate the variety of circumstances that have been sufficient to warrant a reasonable belief that a suspect was on the subject premises: United States v. Route (C.A.5, 1997), 104 F.3d 59,62-63 (finding that the sound of a television from the inside of the house and the presence of a car in the driveway was sufficient to form a basis for the reasonable belief that the *Page 12 
suspect was home); United States v. Risse (C.A.8, 1996), 83 F.3d 212,216-17 (finding that a telephone call to the residence confirming that the suspect was there established reasonable belief); United States v.Lauter (C.A.2, 1995), 57 F.3d 212, 215 (holding that informant's tip that suspect was unemployed and slept late was sufficient to establish reasonable belief that suspect was in apartment); United States v.Edmonds (C.A.3, 1995), 52 F.3d 1236, 1248 (finding that surveillance in front of apartment and observation that no one left during the surveillance was sufficient to establish a reasonable belief that suspect was in apartment); United States v. Magluta (C.A.11, 1995), 44 F3d. 1530, 1535-38 (finding that information that suspect's associate was a frequent visitor to the residence and that associate's car and suspect's car were parked at the residence established reasonable belief that the suspect was in the residence); United States v. Thomas
(C.A.D.C.2005), 429 F.3d 282, 286 (determining that entry into the home in the early morning hours was sufficient to establish a reasonable belief that the suspect would be at home); and Valdez v. McPheters
(C.A.10, 1999), 172 F.3d 1220, 1226-27 (holding that suspect's prior statement that he lived with his mother, the presence of a truck belonging to the suspect's associate outside of the house, reports of suspect's presence at residence days prior to entry, and officer's assertion that suspect would probably be home because he was unemployed established a reasonable belief of suspect's presence at the residence.)
 {¶ 32} In the present matter, when the officers arrived at 1200 West Grand Avenue, they were presented with a laundry list of facts by Agent Mercer. It was known that Ayo Watenza permanently resided there and that he slept in the basement. Furthermore, they learned that Appellant had been contacted earlier in the day and told *Page 13 
that an arrest warrant had been issued for his son, to which he responded that he would bring Ayo to the Secret Service Office. Agent Mercer told the officers that Appellant never came to the office, although he did pick Ayo up from the Dayton Barber College. Moreover, Agent Mercer stated that he and the other agents had been watching the residence upon the return of Appellant's vehicle, and that during this time, Ayo neither came nor went. Omitting the disputed fact that Agent Boswell saw a black male pass by a basement window, we cannot conclude that under these circumstances the officers' reliance on Agent Mercer's information and the subsequent search was objectively unreasonable and in violation of the standard announced in Payton. Given the variance in what facts have been considered sufficient in like circumstances, it was reasonable under the totality of these circumstances for the officers to believe that Appellant had picked up Ayo and returned with him to Appellant's home. Thus, we find that the trial court did not err in granting summary judgment in favor of the officers on this issue.
 {¶ 33} For the purpose of argument, we also find the trial court was correct in concluding that the City and officers were entitled to qualified immunity under the circumstances. Qualified immunity raised as a defense protects government officials from "`liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Humphrey v. Mabry (C.A.6, 2007), 482 F.3d 840, 846, quoting Harlow v. Fitzgerald (1982), 457 U.S. 800, 818, 102 S.Ct. 2727,73 L.Ed.2d 396. "[I]f officers of reasonable competence could disagree as to the lawfulness of the conduct, the immunity should be recognized."Stinnett v. Lutzweit, Clark App. No. 2002 CA 26, 2002-Ohio-5133, at ¶ 17, citing Malley v. Briggs (1986), 475 U.S. 335, 341, *Page 14 106 S.Ct. 1092, 89 L.Ed.2d 271. Ultimately, qualified immunity affords government authorities "`ample room for mistaken judgments' by protecting `all but the plainly incompetent or those who knowingly violate the law.'"Scott v. Clay Cty., Tenn (C.A.6, 2000), 205 F.3d 867, 873, n. 9, quotingSova v. City of Mt. Pleasant, (C.A.6, 1998), 142 F.3d 898, 902.
 {¶ 34} When determining if qualified immunity shields an officer from an alleged violation of a constitutional right, a court must ask two questions: first, taken in the light most favorable to the party asserting the injury, whether the facts alleged show the officer's conduct violated a constitutional right; and second, whether the right was clearly established. Saucier v. Katz (2001), 533 U.S. 194, 201,121 S.Ct. 2151, 150 L.Ed.2d 272. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.
 {¶ 35} Here, the trial court found that qualified immunity applied because the officers "reasonably relied on" the information provided by Agents Mercer and Boswell. We agree. As we stated above, the officers satisfied Payton insofar as they had a reasonable belief that Ayo Watenza was at Appellant's residence when they executed the search warrant. Therefore, our inquiry here concludes, where the facts alleged do not show that the officers' conduct violated a constitutional right. Accordingly, the trial court did not err in finding that there were no genuine issues of material fact as to whether the officers had qualified immunity for their actions.
 {¶ 36} Appellant additionally argues under the second assignment of error that the City is not entitled to qualified immunity. This Court has addressed a similar argument in Stinnett v. Lutzweit, Clark App. No. 2002 CA 26, 2002-Ohio-5133. There, *Page 15 
in determining whether to hold a municipal defendant liable in a Section 1983 action, we provided that "`[t]he plaintiff must be able to "identify a governmental `policy' or `custom' that caused the plaintiff's injury," and the municipality through this policy must have been the "moving force" behind the injury alleged. (citation omitted.) The violation may be visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels. (citation omitted.) However, the custom must be "permanent and well settled [so] as to constitute a custom or usage with the force of law." (citation omitted.) The notion of law must include "deeply embedded traditional ways of carrying out state policy," and reflect a course of action deliberately chosen from among various alternatives. (citation omitted.)'" Id. at ¶ 11, quotingFord v. Cty. of Oakland (C.A.6, 2002), 35 Fed.Appx. 393, 396. Furthermore, "a municipality is not liable on a deliberate indifference standard for failure to supervise and discipline unless there is a showing of history of widespread abuse that the City has ignored." Id. at ¶ 12, citing Secot v. City of Sterling Heights (E.D.Mich.1997), 985 F.Supp 715, 719.
 {¶ 37} In the present matter, Appellant has not directed our attention to any custom or policy of the City of Dayton that was the "moving force" behind his alleged injury. Instead, he asserts that the issue of the City's liability depends on this Court's decision concerning the officers' liability. Having found the officers' conduct lawful, Appellant's argument fails. Moreover, Appellant has not met his burden of showing that the City was the instrumentality behind the officers' conduct.
 {¶ 38} Accordingly, we overrule Appellant's first and second assignments of error.
 II. Appellant's Third and Fourth Assignments of Error *Page 16 {¶ 39} In his third assignment of error, Appellant contends that the trial court erred in granting summary judgment in favor of Sergeant Johns on the issue of whether he had probable cause to make the arrest. According to Appellant, he was permitted to ignore the requests of the officers and remain in the foyer of his home while they searched because the officers were not acting lawfully when they entered his home. As before, Appellant also asserts that Sergeant Johns is not entitled to qualified immunity. For the following reasons, we find these arguments lack merit.
 {¶ 40} Probable cause to arrest exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,13 L.Ed.2d 142. See, also, State v. Timson (1974), 38 Ohio St.2d 122,67 O.O.2d 140, 311 N.E.2d 16, at paragraph one of the syllabus. Moreover, probable cause is a concept that must be based on the totality of the circumstances because it "deals with probabilities-the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act * * * ." State v. Snyder (Aug. 10, 1994), Montgomery App. No. 14089, 1994 WL 420918, at *2 (citations omitted). In other words, probable cause arises from a common sense, practical consideration of interrelated facts and events that lead a reasonable person to act.
 {¶ 41} In the instant action, we have already established that it was objectively reasonable for the officers to believe that they were lawfully searching the premises per the arrest warrant. In any event, it is well-settled that, absent bad faith on the part of the law enforcement officer, a premise's occupant cannot interfere with the officer's *Page 17 
discharge of his or her duty, "whether or not the officer's actions are lawful under the circumstances." State v. Pembaur (1984),9 Ohio St.3d 136, 138, 9 OBR 385, 459 N.E.2d 217. Therefore, our inquiry is whether the facts demonstrate that Sergeant Johns could reasonably have believed Appellant was obstructing official business. R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 42} Here, Appellant is not arguing that Sergeant Johns acted in bad faith. In fact, he concedes that he was told by the officers to remain in the foyer of his home, but objected to the officers' request and proceeded to follow them as they conducted the search. Sergeant Johns' affidavit testimony expounds on this concession, indicating that Appellant became argumentative with the agents and officers, asserting that it was his house and he could do whatever he wanted. Sergeant Johns further testified that Appellant was "loud, belligerent and his actions were erratic." (Johns Aff., Defs.' Ex. 2, at ¶ 5.) Moreover, Appellant followed the officers to the basement of the house while yelling, "`He's not in the basement.'" (Id. at ¶ 6.) According to Sergeant Johns, this behavior appeared to be a warning for any individual who might be in the basement, in addition to creating a dangerous situation for the agents, officers, and the appellant himself. As a result of Appellant's behavior, Sergeant Johns was forced to remain in the kitchen with Appellant while the other officers executed the search.
 {¶ 43} Based on these facts, and in light of the potentially dangerous situation at hand, the trial court found that probable cause existed for Appellant's arrest. We do not *Page 18 
disagree. Appellant has presented no evidence which creates a genuine issue of material fact as to this issue. Thus, we find the trial court did not err in granting summary judgment in favor of Sergeant Johns, where there was probable cause to arrest Appellant for obstructing official business. Appellant's third assignment of error is overruled.
 {¶ 44} Having found that Sergeant Johns acted with probable cause in Appellant's arrest, this Court declines to address whether the trial court erred in granting summary judgment in the officer's favor on the grounds that he is entitled to qualified immunity. Appellant's fourth assignment of error is thereby rendered moot.
 III. Appellant's Fifth Assignment of Error {¶ 45} Under the fifth assignment of error, Appellant argues that the trial court erred in granting summary judgment for the appellees on his claims of malicious prosecution, false arrest and false imprisonment. Appellant bases this argument on the allegations that the officers lacked probable cause for his arrest and their conduct evinces ill will and malice.
 {¶ 46} To prevail on a cause of action for malicious prosecution, the plaintiff must prove "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Criss v. Springfield Twp. (1990),56 Ohio St.3d 82, 84, 564 N.E.2d 440. "`Probable cause' in connection with an action for the malicious prosecution of a criminal proceeding, is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with *Page 19 
which he is charged. With reference to civil actions, probable cause has been said to be such reason supported by facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting such action are legally just and proper." Garcia v.Bailey (May 22, 1998), Montgomery App. No. 16646, 1998 WL 310742, at *4.
 {¶ 47} Here, as we stated above, there was probable cause for Appellant's arrest. Appellant disregarded the request of the officers to remain in the foyer of his home while they searched the premises for his son, Ayo. Appellant's defiance diverted the officers' attention from the task at hand and subjected all parties involved to the possibility of a dangerous situation. The trial court granted summary judgment in the appellees' favor on the grounds that Appellant had failed to provide evidence of malice on the part of the arresting officers, in addition to there being probable cause for the arrest. On the latter finding alone, we find that the trial court's decision was proper.
 {¶ 48} Furthermore, a claim for false arrest is indistinguishable from a claim for false imprisonment in its essential elements — each claim requires proof that one was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification. Evans v. Smith (1994), 97 Ohio App.3d 59, 70,646 N.E.2d 217, citing Feliciano v. Kreiger (1977), 50 Ohio St.2d 69, 4 O.O.3d 158,362 N.E.2d 646. Thus, "to succeed on a claim of false arrest or imprisonment, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures." Krantz v.City of Toledo Police Dept. (N.D.Ohio 2005), 365 F.Supp.2d 832, 837, citing McFinley v. Bethesda Oak Hosp. (1992), 79 Ohio App.3d 613,607 N.E.2d 936. *Page 20 
 {¶ 49} In the instant case, the officers' authority to arrest Appellant for obstructing official business was derived from the existence of probable cause, as we discussed above. Moreover, we find that the officers' use of handcuffs to detain Appellant temporarily while they searched the house was reasonable in light of Appellant's conduct and the information learned by the officers prior to the search, i.e., that Ayo Watenza had a criminal history involving weapons violations. "In such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants."Muehler v. Mena (2005), 544 U.S. 93, 100, 125 S.Ct. 1465,161 L.Ed.2d 299. Thus, we find that the trial court did not err in granting summary judgment in favor of the appellees on Appellant's malicious prosecution, false arrest and false imprisonment claims. Accordingly, Appellant's fifth assignment of error is overruled.
 {¶ 50} For the foregoing reasons, we overrule Appellant's first, second, third and fifth assignments of error, thereby rendering moot the fourth assignment of error. The judgment of the trial court is affirmed.
Wolff, P.J., and Grady, J., concur.
[1] According to the Supreme Court of Ohio, issue preclusion, or collateral estoppel, applies when a fact or issue "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." Thompson v. Wing (1994),70 Ohio St.3d 176, 183, 637 N.E.2d 917. *Page 1